# Brown v. Mayor and Aldermen of Birmingham.

*Bill in Equity to restrain Enforcement of Municipal Ordinance.*

1. *Equity jurisdiction; can not enjoin enforcement of quasi criminal prosecution.*—The jurisdiction of courts of equity are purely and exclusively civil; and, therefore, such courts are without power to enjoin the commission of threatened crimes or to restrain threatened prosecutions for the commission of alleged crimes.

2. *Same; same; municipal ordinance.*—A court of equity is without jurisdiction to enjoin the enforcement by *quasi* criminal prosecution of a municipal ordinance, as well as a prosecution for the violation of State laws; and this is true, although the ordinance or statute, for an alleged violation of which the prosecution is threatened, is absolutely void.

3. *Same; same; same.*—The averment in a bill seeking to enjoin the enforcement of a penal municipal ordinance, that the threatened prosecution, if allowed to proceed, would inflict irreparable damage upon complainant, is not sufficient to give equity to the bill.

4. *Same; same; same.*—In such a case, the averment that there would be repeated and numerous prosecutions under the penal ordinance, which would result in a multiplicity of actions, is not sufficient to inject equity into such a bill.

5. *Same; same; same.*—In such a case, the fact that the complainant is a non-resident of the State, does not give equity to the bill and entitle him to the relief prayed for.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellant, E. F. Brown, against the Mayor and Aldermen of Birmingham, a municipal corporation, and sought to enjoin the defendant, its officers, servants and agents from the enforcement of an alleged ordinance which is claimed to have been adopted by the defendant at its regular meeting on July 15, 1903. Said ordinance is set out at length in the bill of complaint.

The bill averred the following facts: At the time of filing the bill and for some time prior thereto, complainant was engaged in the business of running and operating the Morris Hotel Billiard and Pool Parlor in the city of Birmingham.

Complainant made and entered into an agreement with the Western Union Telegraph Company, of New York, to furnish daily, to complainant in his said billiard parlor, detailed telegraphic reports of sporting events, including reports of base ball games and horse races occurring in the United States and Canada. Said telegraphic reports were received in said billiard parlor by wire, by one Charles E. Berry, a telegraph operator, who was employed by complainant. It was the duty of said Berry, under his contract of employment, among other things, to announce verbally said sporting events as they transpired, and to cause the result to be posted or marked on a blackboard, made for that purpose, and placed in said billiard parlor. No betting and wagering of any kind, in any shape, form or fashion whatever is permitted, allowed or engaged in by any one in said billiard parlor. Said telegraphic reports are furnished to the public free of charge and no entrance fee or admission fee is charged for same, the furnishing, announcing and posting said reports being a plan of advertising of complainant, in order to attract and entertain the patrons and customers of complainant's said billiard parlor. While discharging his said duty,

said Charles E. Berry was arrested under a warrant sworn out by the chief of police of Birmingham charging him (Berry) with violating the anti-pool selling statute of the State, and out of his trial and acquittal grew the ordinance in question. Sections 1, 2, 3, and 4 of said ordinance are practically the same as the State statute against pool selling and book-making on horse races, but sections 5, 6, 7, 8, 9, 10, and 11 of said ordinance go further and prohibit all persons from receiving by telegraph and announcing any information concerning horse races taking place, either within or without this State, and from receiving and announcing and having published the results of horse races occurring without this State regardless of whether there is any betting or wagering on said races or not, and regardless of whether such receiving, announcing and publishing is done in aid or furtherance of any person or persons making any bet or wager on said races or not. Said sections also prohibit the public generally from visiting and remaining in any place in which is announced the progress of horse races.

It was averred in the bill that said ordinance was not regularly passed by the defendant; that the charter provisions and rules of the defendant relative to the adoption of the ordinance were not complied with; that said ordinance was never passed by a yea and nay vote; that neither the original ordinance, nor the minutes of the defendant were signed by the mayor, and that in truth and in fact said ordinance never became a law. It was further averred that the enforcement of said ordinance would contravene the rights of the complainant and of other citizens and that the same was inconsistent with and repugnant to the general laws and policy of the State, and was interfering with and restraining the exercise of the business and trade of the complainant, and that its enforcement would deprive the complainant of his property and property rights without due process of law.

It was then further averred that the defendant was insolvent; that the enforcement of said ordinance would result in irreparable injury and damage to the complain-

ant, would entail great loss, and that no damages could be recovered against the defendant for such loss; that the threatened arrest by the defendant's officers would result in a multiplicity of suits for damages and numerous prosecutions, and that the damages, when recovered, could not be collected from the defendant.

It was then averred that by reason of a contract which the complainant had made with the Western Union Telegraph Company, which was a common carrier, the enforcement of said ordinance would result in depriving the complainant of his contractual rights and would also be an unwarranted interference with interstate commerce. It was further averred that the complainant was a citizen of the State of Virginia, and that the enforcement of said ordinance would be in violation of the rights and privileges guaranteed to the complainant by Article XIV, § 1 of the Constitution of the United States.

The prayer of the bill was for an injunction, restraining the defendant and its officers, agents and servants from making arrests under and otherwise enforcing said ordinance. The defendant demurred to the bill and moved to dismiss the same for the want of equity.

On the submission of the cause on the demurrers and motion, the chancellor rendered a decree sustaining the motion to dismiss the bill for the want of equity, and ordered the bill dismissed. From this decree the complainant appeals, and assigns the rendition thereof as error.

POWELL & BLACKBURN and PHARES COLEMAN, for appellant.—The ordinance, the enforcement of which is sought to be enjoined, was never regularly and legally passed by the Mayor and Aldermen of Birmingham, and therefore never became a law of the city of Birmingham. Under these circumstances the enforcement or threatened enforcement of said ordinance would be a trespass.—Horr & Bemis on Municipal Ordinances, § 35. It nowhere appears from the minutes that the ordinances were passed by a yea and nay vote. These requirements of the charter and rules of order are mandatory

38

and the ordinance is void if the record is defective.—Acts of 1898-1899, p. 1403, §§ 19, 23; *Walker v. Griffith*, 60 Ala. 361; 17 Amer. & Eng. Ency. of Law (1st ed.), 243; *Spangler v. Jacoby*, 14 Ill. 298; *Steckert v. Saginaw*, 22 Mich. 103; *Jones v. Hutchinson*, 43 Ala. 724.

The appellant is a resident of the State of Virginia, and under constitutional guarantee is entitled to equal protection of the laws. The Western Union Telegraph Company is a corporation organized under the laws of the State of New York, with their principal place of business in the city of New York, and under their charter powers had a perfect legal right to enter into the contract with appellant described in the bill, and to deliver to appellant in Birmingham by telegraph the progress and results of horse races, base ball games, and other sporting events. Such telegraphic transactions and the telegraph business generally has been repeatedly held to be inter-State commerce.—*W. U. T. Co. v. Pendleton*, 122 U. S. 347; *Pensacola Telegraph Co. v. W. U. T. Co.*, 96 U. S. 1; *Telegraph Co. v. Texas*, 105 U. S. 460.

The only authority which a State or city would have to prohibit the receiving and posting within its borders such telegraphic announcements would be under that indefinite authority known as "police power." But this power cannot be exercised indiscriminately. The public good must demand the exercise of such power.

Said sections 5 to 11, inclusive, of said ordinance, are unreasonable, partial and unfair, and are in restraint of trade, and contravene public policy and the general laws of the State.—*Town of Greensboro v. Ehrenrich*, 80 Ala. 580; Dillon, Municipal Corporation, (4th ed.), §§ 393, 325, 229; *Milliken v. City Council*, 30 Am. Rep. 629.

Any general grant of power to a municipality by legislative authority does not carry with it the power to prohibit the exercise of a lawful occupation, not *per se* a nuisance, and not so conducted as to be an annoyance to the public.—*Weil v. Ricard*, 24 N. J. Eq. 169; *Barling v. West*, 9 Am. Rep. 576; *Breniger v. Belvidere*, 44 N. J. L. 350.

The jurisdiction of a court of equity is purely and exclusively civil. Its powers and jurisdictions as declar-

ed by our statutes, extend to all "civil causes" in which a plain and adequate remedy is not provided in other tribunals. It is because the complainant in this case has no plain and adequate remedy in a court of law, that he is impelled to come into a court of chancery to preserve his rights. While, as stated by Lord ELDON, "It is well established that a court of chancery has originally no jurisdiction whatever either to enjoin or regulate proceedings upon an indictment," or criminal proceedings of any character, yet, as he further says, "circumstances may give that jurisdiction."—*Attorney General v. Cleaver,* 18 Vesey, 219.

It has been expressly decided that "the mere fact that an act is criminal does not divest the jurisdiction of equity to prevent it by injunction, if it be also a violation of the property rights, and the party aggrieved has no other adequate remedy for the prevention of irreparable injury which will result from the failure or inability of a court of law to redress such rights." *Port of Mobile v. L. & N. R. R. Co.,* 84 Ala. 115; *Mayor, etc. of Mobile v. Waring,* 41 Ala. 139; *Third Ave. R. R. Co. v. New York,* 54 N. Y. 159; *Mayor, etc. of Baltimore v. Radecke,* 49 Md. 217; s. c. 33 Am. Rep. 239.

There is now a well established principle in equity jurisdiction that if the acts done or threatened to be done result in injury to the property or property rights of another, which would be ruinous or irreparable, or would impair the just enjoyment of his property in the future, that a court of equity will intervene by injunction to restrain the commission of such acts; and this is true, though the act be under the color of a municipal ordinance. It is based upon the idea that an unlawful act committed under an ordinance, which is void, amounts to a trespass, and a series of trespasses by improper arrests will have the effect to destroy or impair the exercise of rights secured by contract.—*Lyon v. Hunt,* 11 Ala. 295; s. c. 46 Am. Dec. 216; *Poindexter v. Henderson,* 12 Am. Dec. 550; *White v. Flannigain,* 1 Md. 525; s. c. 54 Am. Dec. 668; *Osborn v. United States Bank,* 9 Wheat. 738.

There seems to be very little question as to the right to enjoin where property rights are invaded by the at-

tempted enforcement of void ordinances or statutes; it being distinctly held that under such circumstances, substantial grounds were presented for equitable interference and relief.—*La. State Lottery v. Fitzpatrick,* 3 Woods (U. S.) 222; *M. Schandler Bot. Works v. Welch,* 42 Fed. Rep. 563; *Central Trust Co. v. Citizens Street R. Co.,* 80 Fed. Rep. 225; *Mobile v. L. & N. R. R. Co.,* 84 Ala. 516; 5 Am. St. Rep. 342; *Atlanta v. Gate City Gas L. Co.,* 71 Ga. 107; *Davis v. Fasig,* 128 Ind. 271; *Baltimore v. Radecke,* 49 Md. 217; 33 Am. Rep. 239; *Schuster v. Metropolitan Board of Health,* 49 Barb. (N. Y.), 450; *Austin v. Austin,* 87 Tex. 330; 47 Am. St. Rep. 114.

It has been expressly decided that equity will enjoin a criminal proceeding or a threatened arrest, irrespecttive of other considerations, when a right of enjoyment of property will be injuriously affected thereby, and the complainant will suffer irreparable damage for which there is no adequate remedy at law.—*Central Trust Co. v. Citizens St. R. Co.,* 80 Fed. Rep. 225; *Atlanta v. Gate City Gas L. Co.,* 71 Ga. 107; *Ewing v. Webster City,* 103 Iowa, 226.

When proceedings, which are *quasi criminal,* invade vested rights and will cause irreparable injury to the defendant in such proceedings, he may enjoin them, especially when brought under a municipal ordinance. *Davis v. Fasig,* 128 Ind. 271; *Sylvester Coal Co. v. St. Louis,* 130 Mo. 323; *Wood v. Brooke,* 14 Barb. (N. Y.), 425; *Schuster v. Met. Board of Health,* 49 Barb. (N. Y.), 450.

Again it has been expressly decided that "when employes of a corporation are arrested under an invalid ordinance and fined because the corporation does not comply therewith, and further prosecutions are threatened if the refusal be persisted in, equity will enjoin the enforcement of the ordinance.—*Rushville v. Rushville Nat. Gas Co.,* 132 Ind. 575. See also *Austin v. Austin Cem. Asso.,* 87 Texas, 330; *Manhattan v. Friend,* 12 Abb. (N. C.), 446; *Bottling Co. v. Welch,* 42 Fed. Rep. 561; *Hall v. Schutz,* 31 How. Prac. 331.

There are two exceptions, clearly recognized, to the rule that courts of equity will not interfere to restrain

trespasses, whether committed under the forms of law or otherwise, which are, first, to prevent irreparable injury, and second, to prevent a multiplicity of suits. *Mayor of Brooklyn v. Meserole,* 26 Wend. 132; *Moon v. Smedley,* 6 Johns Ch. 28; *Owens et al. v. Crossett,* 105 Ill. 356; *Garside v. City of East St. Louis,* 43 Ill. 47. The court says in *Owens et al. v. Crossett, supra,* "the jurisdiction is maintained upon the express ground that the trespasses were continued, and the trespassers being wholly insolvent, there was no adequate remedy at law, and the injury was, therefore, irreparable. There is no allegation in the bill in this case showing insolvency of the defendants thereto, or their inability to respond in damages to any amount for which complainant may recover damages."

E. D. SMITH and JOHN C. FORNEY, *contra.*—The facts averred in the bill do not show a cause for the interference of a court of equity. The ordinance is penal. Any one arrested under this ordinance can show its invalidity on his trial; and, therefore, can obtain adequate relief in a court of law. It has been held by this court that a bill will not lie to enjoin a municipality from prosecuting *quasi* criminal proceedings for repeated violations of an alleged ordinance.—*Burnett v. Craig,* 30 Ala. 138; *Moses v. Mayor,* 52 Ala. 198; *Beebe v. Robinson,* 52 Ala. 66.

This ordinance is the exercise of the police power of the city of Birmingham. It has been held that there can be no irreparable injury nor any multiplicity of suits.—*Denver v. Beede,* 54 Pac. Rep. 624.

"There is no doubt of the power of municipalities deriving their power from the Legislature to make police regulations designated to promote the health and morals of a community. Such laws to prohibit or regulate gaming, etc., and thus indirectly advance the morals and good order of society are beyond question. Any practice, the tendency of which is to corrupt morals, is a proper subject of regulation."—*Missouri v. Thompson,* 54 L. R. A. 950.

McCLELLAN, C. J.—Brown is complainant in, and the Mayor and Aldermen of the city of Birmingham are the respondents to, this bill. Its object and prayer is to enjoin the city authorities from enforcing or attempting to enforce by *quasi* criminal prosecutions a certain ordinance of the municipality, which the bill alleged to be wholly void. On the exhibition of the bill to the judge of the Tenth circuit, its prayer for a preliminary injunction was granted, and the writ issued accordingly. Thereupon the respondent filed its answer, and moved the dissolution of the preliminary injunction on the denials of the answer and also for the want of equity in the bill. The chancellor granted the motion on the latter ground, holding that the bill was without equity. From this decretal order this appeal is prosecuted.

We discover nothing in the case made by the bill to take it out of the well settled general doctrine that the jurisdiction of courts of equity is purely and exclusively civil; that, of consequence, they are without power to enjoin the commission of threatened crimes on the one hand and to enjoin threatened prosecutions for the commission of alleged crimes on the other, that violations of State laws and violations of penal municipal ordinances, and prosecutions for both, stand upon the same footing in this connection, and that it is wholly immaterial that the statute or ordinance for an alleged violation of which prosecution is threatened is absolutely void.—*Pike County Dispensary v. Brundidge,* 130 Ala. 193; *Burnett v. Craig,* 30 Ala. 135; *Moses & Beebe v. Mobile,* 52 Ala. 198; *Arbuckle v. Blackburn,* 113 Fed. 616; *Denver v. Beede,* (Col. Sup.) 54 Pac. 624; *Paulk v. Sycamore,* (Ga.), 41 L. R. A. 772; 16 Am. & Eng. Ency. Law, pp. 370-372.

The averment of this bill that the threatened prosecutions, if allowed to proceed, will inflict irreparable damages upon the complainant is beside the mark. If the *quasi* criminal ordinance for violations of which the prosecutions are about to be instituted is a valid ordinance, the ascription of damages, however irreparable, is, of course, not to the prosecutions in any legal sense but to the complainant's own voluntary and unlawful

acts: Criminals have no standing any where to complain of detriment to their persons, business or estates resulting directly or indirectly from their prosecution and conviction. On the other hand, if the ordinance in question is invalid, it is to be assumed that it will be so determined by the court of first instance on the trial of the first prosecution under it, and no more injury be inflicted upon the complainant than is necessarily incident to all prosecutions of alleged offenders who are found to be not guilty; and so far as damages are concerned, there would be the same want of equity in such bill as in one to enjoin the prosecution of an innocent man for the alleged violation of a confessedly valid statute: Criminal and *quasi* criminal causes cannot in our system of jurisprudence be tried and determined upon such bills, any more where the party proceeded against is innocent for that no statute or law denounces his act as a crime than where he in fact has not committed the criminal act charged, or, indeed where he has in fact committed the criminal act denounced. If he is guilty the criminal courts will punish him, and it may be to his utter undoing in person and estate. If he is not guilty of any offense, either because the act charged is not an offense, or because he has not committed the act, those tribunals will acquit him, and there is an end of it. In either case, whatever damages he in fact sustains from the prosecution are those only to which all citizens must submit in the first instance, looking to the courts of common law for compensation for the malicious wrongs of the prosecutors.

Not only is it true in a legal sense that no damages, irreparable or otherwise, result to a defendant from a *bona fide* prosecution for an alleged crime, but it is also legally true that if he be innocent, either for that the act charged is not an offense, or for that he did not commit the act, his remedy at law is plain, adequate and complete by way of establishing and having his innocence adjudged in the criminal court before which he is tried; and for this reason also he has no footing to invoke the chancery court to enjoin the prosecution.

The averment that repeated and numerous prosecutions are threatened is not a sesame to open the gates of

equity injunctive jurisdiction to the complainant, on the idea of preventing a multiplicity of suits. Repeated prosecutions will be consequent only upon repeated in- fractions by the complainant of the ordinance, all of which he can, of course, forestall and avoid by the sim- ply desisting from the alleged criminal acts pending the first prosecution. Moreover, the application of the doc- trine of prevention of multiplicity of suits sought to be made here would involve this general proposition, that whenever a person is being prosecuted severally for num- erous alleged offenses, he may to avoid their multiplicity have all the prosecutions enjoined and the several cases tried in one proceeding in the chancery court. If it be said that the multiplicity of actions sought to be prevent- ed is not the prosecutions themselves but suits for dam- ages that will result to the complainant from the prose- cutions, the same reply may be suggested. The occa- sions and necessity for such suits may be avoided by his simple desistance from repeated violations of the ordin- ance while its validity is being tested in one prosecution.

But apart from all these considerations—or looking to them only as some of the reasons underlying the broad proposition now to be announced—the general rule is that the chancery court is wholly without jurisdiction to enjoin such *quasi* criminal prosecutions however great and irreparable the damages to result! from them to the party complaining may in fact be: It is not the sort of case in which the court can interfere, though the consequences to the complainant of allowing the prose- cutions to proceed may be ever so grievous and irrepar- able. This statement of the doctrine includes or neces- sarily leads to the proposition that the insolvency of the municipality under the supposed authority of which the prosecutions are to be instituted, and of its officers pro- ceeding therein, is altogether immaterial: The admin- istration of state and municipal governments in the prosecution of alleged violators of their penal laws or of violators of their supposed criminal laws must be left to take its own course in the courts ordained to administer those laws, unhindered by courts of equity whose activities are in general strictly confined to mat-

ters of a purely civil nature, and this though such administration may wrongfully entail damages upon the citizen which are grievous indeed, and beyond all remedy, either because in their nature irreparable or because he is balked of their recovery by the insolvency of those responsible for the prosecutions. There are, it is true, some so-called exceptions to the general rule we have stated, that is, there are some cases in which prosecutions for alleged violations of penal ordinances may be enjoined; but it would perhaps be more apt to say that injunctions in such cases may be granted as incidental and ancillary to the exercise of some acknowledged equity jurisdiction resting upon other bases than the mere harassment of prosecutions under void ordinances than that the cases form an exception to the general rule. Illustrative cases are those in which the criminal proceedings sought to be enjoined are instituted by a party to a suit already pending in a court of equity to try the same right in issue in such suit; those in which the prosecution is against an officer of chancery for an act done in pursuance of the court's order or decree, and those in which prosecutions under a void ordinance will destroy or impair *property* rights to the irreparable injury of the owner. The present is obviously not within the first two of these categories. That it is not within the last, but, to the contrary, is covered by the decisions of this court against the equity of such bills in *Burnett v. Craig, supra; Moses & Beebe v. Mobile, supra;* and *Forcheimer v. Mobile,* 84 Ala. 126, is demonstrated by and in effect declared in *Mobile v. Louisville & Nashville Railroad Co.,* 84 Ala. 115, 126. No *right of property* is threatened by the proposed prosecutions, directly or indirectly. Assuming (without at all considering that question) the invalidity of the ordinance, the utmost that will be involved in the prosecutions and arrest of complainant under them will be no more than trespasses to his person, and courts of equity are without power to enjoin threatened trespasses upon the person.—*M. & W. P. R. R. Co. v. Walton,* 14 Ala. 207; *Burnett v. Craig,* 30 Ala. 135; and this though such trespass would impinge upon his constitutional rights of life, liberty and

the pursuit of happiness.

It is averred in the bill that complainant is a citizen of Virginia, and it seems to be contended in the brief that this fact entitled him to the relief he prays by force of the Fourteenth amendment to the Constitution of the United States. We have never understood that amendment to confer upon non-residents of the State who are citizens of the United States any greater or other privileges or immunities than those enjoyed by the citizens of the State, and we believe no suggestion of that sort has ever been made by any court.

The decree of the chancellor dissolving the injunction must be affirmed.

Affirmed.