# City of Bessemer *v.* Bessemer City Water Works.

*Bill to Declare an Ordinance Null and Void.*

(Decided July 2, 1907.—44 South. 663.)

1. *Injunction; Jurisdiction; Criminal Prosecution.*—As a general
rule court of equity will not enjoin threatened crimes on the one
hand, or prosecutions under statute or ordinances although the stat-
ute or ordinance for the violation of which prosecution is threatened,
is absolutely void.

2. *Same.*—Equity will protect a vested franchise from unlawful in-
vasion or disturbance from irreparable injury, or from such injury as
cannot be compensated adequately in an action at law.

3. *Same.*—Equity will not interfere to enjoin a city from making
effective an ordinance, at the instance of the water company claimed
by said company to impair the company's vested rights under a fran-
chise from the city, where the right claimed by the city is doubtful or
where it is uncertain whether the acts complained of is an infraction
of the franchise.

4. *Municipal Corporations; Powers; Grant.*—Municipal corpora-
tions can exercise such powers only as are expressly granted or nec-
essarily implied from the grant, or incidentally necessary to the car-
rying out of the powers granted.

5. *Same; Water Works; Authority of the City to Contract for
Rates.*—Under its charter (Acts 1900-01, p. 444), the city of Besse-
mer may contract with a water company for rates at which water
shall be supplied to its citizens for a definite period, suspending its
charter power respecting the regulation of rates during such period,
and such a contract is a vested right for the time fixed; and hence, a
subsequent ordinance attempting to reduce the rates specified by the
contract before its termination, is invalid as impairing the obligation
of the contract.

[City of Bessemer v. Bessemer City Water Works.]

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. A. COLEMAN.

Bill by the Bessemer Waterworks against the city of Bessemer. From a decree denying defendant's motions to dissolve the preliminary injunction and to dismiss the bill for want of equity, and overruling demurrers, defendant appeals. Affirmed.

This was a bill praying to have an ordinance passed by said city, attached to the bill as Exhibit D, declared null, void, and unconstitutional in so far as the same applies to this complainant, and to enjoin the said city of Bessemer, its officers and agents, from seeking to enforce said ordinance, and from harassing, arresting, prosecuting, or interfering with complainant for charging and collecting, for water furnished by it for domestic purposes, sums not exceeding the maximum rate provided by the contract heretofore entered into between the city of Bessemer and the Bessemer Waterworks, fixing such rate. Preliminary injunction was issued as prayed, and after motion made to dissolve the injunction the respondent entered a motion to discuss the bill for want of equity. The cause was submitted upon respondent's motion to dissolve the preliminary injunction and to dismiss the bill for want of equity, both of which motions were denied.

BEN G. PERRY, and ESTES, JONES & WELCH, for appellant. The mayor and aldermen have the power under the charter to pass more than one resolution, by-law and ordinance to regulate rates to be charged for water, and the only prohibition placed on the mayor and aldermen is that the rates must not be unreasonable.—Acts 1900-01, p. 444; Danville v. Danville Water Co., 69 Am .St. Rep. 304. The power to regulate rates to be charged for water for domestic purposes is a legislative power, con-

tinuing in its nature and not exhausted by the enactment of one ordinance or by-law on the subject, therefore, the ordinance contract does not preclude the authority from passing such other ordinances as they may deem proper to change the rate for water, so long as they are not unreasonable.—*Goszler v. Georgetown,* 6 Wheat. 593; *Freeport Water Co. v. Freeport,* 180 U. S. 587; *Wagner v. Rock Island,* 146 Ill. 139; *Rogers P. W. Co. v. Ferguson,* 173 Ill. 571; *Knoxville v. Knoxville Water Co.,* 107 Tenn. 641; ;166 U. S. 673; 8 Barb. 95; 2 Hill 456. The city cannot deprive itself of its government functions by contract or bargain unless the power to do so is conferred on it by positive grant.—*Mayor and Ald. of B'ham. v. B'ham. W. Wks.,* 139 Ala. 531. The law that gave the city the right to contract for water reserves in the city the power to legislate as to the rates to be charged and the company had notice of this and cannot complain.— *Danville v. Danville W. Co., supra;* 28 Ency of Law, 433; 20 Id. 1142. The power to regulate rates to be charged for water is a governmental function, of which the city cannot divest itself.—*Goszler v. Georgetown, supra; Montgomery v. Capital City W. W. Co.,* 92 Ala. 361. This power cannot be abridged by contract.—*Mayor and Aldermen of B'ham. v. B'ham. W. W. Co., supra.* The power to regulate rates to be charged for water is legislative, continuing in its nature and cannot be abridged by contract.—*Crosby v. City Council of Mtgy.,* 108 Ala. 498; 30 A. & E. Ency. of aw, 415; 1 Dill. Mu. Corp. (4th Ed.) sec. 97 and citations; 2 Dill Mu. Corp. (4th Ed.) sec. 716; *City Council of Montgomery v. Capitol City Water Co.,* 92 Ala. 361; *Mayor and Aldermen of Birmingham v. Birmingham Water Works,* 139 Ala. 531; *City of Tampa v. Tampa Water Co.,* 34 So. 631; *Munn v. People,* 69 ll. 80 Sc. 94 U. S. 113; *Budd v. N. Y.,* 143 U. S. 517; *Santa Ana Water Co. v. Van Buen,* 56 Fed. Rep.

339; *Winchester v. Caxton,* 33 L. R. A. 177; *Homes v. Rouse,* 8 Wall. 430 (19 L. E. 495); *Natl. Bank v. St. Joseph,* 31 Fed. 216; *Huron Water Co. v. Huron,* 39 L. R. A. 848; *Ogden City v. Ogden Water Co.* (Utah) 41 L. R. A. 305.

It is a well settled rule, both in England and America, that a court of equity has no jurisdiction to interfere by injunction to restrain a criminal prosecution whether the prosecution be for violations of statutes or for infraction of municipal ordinances. The rule applies whether the prosecution is by indictment or by summary process, and to prosecutions that are merely threatened or anticipated as well as those that have already commenced. And even if the ordinance under which the prosecution is had or threatened is void it constitutes no ground for injunction.—16 A. & E. Ency. Law (2nd Ed. 370-1); *Moses v. Mobile,* 52 Ala. 208; *In re. Sawyer,* 124 U. S. 210; *N. C. & St. R. R. Co., v. Attalla,* 118 Ala. 362; *Forcheimer v. Mobile,* 84 Ala. 126; *Port of Mobile v. L. & N. R. R. Co.,* 84 Ala. 115;. *Burnett v. Craig,* 30 Ala. 135; *The Old Dominion Tel. Co. v. Powers,* 140 Ala. 220; *Brown v. Mayor and Aldermen of B'ham,* 37 So. 173; *Weller et al v. City of Gadsden,* 141 Ala. 642; *City of Montgomery v. West,* 40 So. 215; Sufficient facts are not averred to warrant injunctive relief.—*Mont. L. & W. Power Co. v. Citizens L. H. & P. Co.,* 142 Ala. 462.

PERCY & BENNERS, and T. T. HUEY, for appellee. The agreement as to maximum rates to be charged by the Water Works for its water contained in the contract between the Water Works and the city (Exhibit D) constituted a contract binding alike upon the Water Works, the city and its citizens.—*Smith v. Birmingham Water Works Company,* 104 Ala. 315, 323; *Crosby v. City Council of Montgomery,* 108 Ala. 498; *Griffith v. Vicksburg*

*Water Works Company,* 40 Sou. Rep. (Miss.), 1011. The
city was expressly authorized "to make all needful pro-
vision by contract  .  .  .  for the supply of the city
and citizens thereof with water." This power included
the right to agree upon the rates to be charged for wa-
ter.—*Omaha Water Company v. City of Omaha,* 147 Fed.
Rep. 1; *City Council of Montgomery v. Capital City Wa-
ter Co.,* 92 Ala. 366, 371, 376. In the following cases
words in a contract between a water works or street car
company and a municipality to the eeffct that rates
*should not exceed* certain sums, were held to confer on
such company, the right to charge the maximum rate
agreed on.—*Smith v. Birmingham Water Works,* 104
Ala. 315; *Omaha Water Works Co. v. City of Omaha,*
147 Fed. Rep. 1; *Detroit v. Detroit St. Ry.,* 184 U. S|
368; 46 L. Ed., 592.

A municipal corporation, though invested with the
power of regulating water rates, may bind itself by an
irrevocable contract not to regulate them for a fixed
term.—*Freeport Water Company v. Freeport,* 180 U. S.
587, 593; 45 L. Ed. 686; *Los Angeles v. Los Angeles City
Water Co.,* 177 U. S. 558; 44 L. Ed 886; *Detroit v. De-
troit Citizens Street Ry. Co.,* 184 U. S. 368; *Omaha Wa-
ter Co. v. City of Omaha,* 147 Fed. Rep. 1. Thirty years
is not an unreasonable term for a contract conferring a
franchise.—Constitution, Sec. 228. Twenty-five years
was not held to be in *Greenville v. Greenville Water
Works,* 125 Ala., bottom of page 640. A municipality
enters into a contract for a water supply for itself and
its inhabitants in its private as distinguished from its
governmental capacity.—*Greenville v. Greenville Water
Works,* 125 Ala., bottom of page 640; *Little Falls Elec-
tric & Water Co. v. Little Falls,* 102 Fed. Rep. 663; *Illi-
nois Trust & Savings Bank v. Arkansas City,* 22 C. C. A.,
171, 182, 34 L. R. A. 518; *Omaha Company v. Omaha,*

147 Fed. Rep. 1. The bill is not one *merely* to enjoin a criminal prosecution; nor is it one *merely* to enjoin a multiplicity of criminal prosecutions for a series of similar crimes; it not only seeks to protect property rights but also seeks to prevent a multiplicity of civil suits between the water works and the consumers of its water. Injunction is the proper and the only *adequate* remedy. —*Palatka Water Works v. Palatka,* 127 Fed. Rep. 161; *Mobile v. L. & N. R. R. Co.,* 84 Ala. 115; *Southern Express Co. v. Ensley,* 116 Fed. Rep. 756; *Detroit v. Detroit Citizens Street Ry. Co.,* 184 U. S. 368, beginning of opinion; *In re Debs,* 158 U. S. 564, opinion, p. 593; *McQuillan's Municipal Ordinances.* Sec. 285; *New Memphis Gas Light Co. v. City of Memphis,* 72 Fed. Rep. 952; *Smyth v. Ames,* 169 U. S. 466, 42 L. Ed. 839; *Los Angeles City Water Co. v. Los Angeles,* 88 Fed. Rep., oppinion, pp. 746, 747, 748; subd. 5; Affirmed in 177 U. S. 558;; 44 L. Ed., 886; *Los Angeles City Water Co. v. Los Angeles,* 103 Fed. Rep. 711; *Mobile v. Bienville Water Supply Co.,* 130 Ala. 379; *Haverhill Gas Light Co. v. Barker,* 109 Fed. Rep. 694; *Dinsmore v. Southern Express Co.,* 92 Fed. Rep. 714. The enforcement of rates arbitrarily fixed, particularly if fixed without a hearing or notice to interested parties, will be enjoined.—*City of Chicago v. Rogers Park Water Co.,* 214 Ill. 212; 73 N. E. Rep. 375; *San Diego Case,* 62 Am. St. Rep., top pof page 278; L. R. A. 465, 466; subd. 5 off oppinion. And if fixed for the purpose of depressing the value of the water works, the law will circumvent the accomplishment of such design. —*Knoxville Case,* 189 U. S., on page 438. Under legislative authority to fix rates a water company is entitled to have rates fixed which will yield a reasonable return on the value of its property and unreasonable rates may not be fixed.—*Brymer v. Butler Water Co.,* 179 Penn. 250, 251; 36 L. R. A. 260; *Long Branch Commission v.*

*Tintern Manor Water Co.,* 62 Atl. Rep. 474; *San Diego Water Co. v. San Diego,* 118 Cal. 556; 38 L. R. A. 460; *Cedar Rapids Water Co. v. Cedar Rapids,* 118 Iowa, 260, 261; *Des Moines v. Water Works,* 95 owIa, 348, 362-63; Beall and Wyman on R. R. Rate Regulation, Secs. 312, 313, 315; *Smyth v. Ames,* 169 U. S. 466; *Spring Valley Water Works v. San Francisco,* 124 Fed. Rep. 601; *Goebel v. Grosse Point Water Works Co.,* 126 Mich. 307. The reasonableness of rates depends on the circumstances of each case. The allegation that rates are unreasonable is necessarily a conclusion.—*Water District v. Water Company,* 99 Maine, 371; head note, 5; 59 Atl. Rep. 537; *Souther v. Gloucester,* 187 Mass. 552; 73 N. E. 558.

A statute which authorizes the fixing of rates to be charged by a corporation whose rates are subject to governmental regulation and which does not permit a judicial determination of the reasonableness of such rates, is unconstitutional.—*Chicago, etc. v. Minnesota,* 134 U. S. 456-8. A franchise once granted may not be destroyed by a subsequent ordinance.—*Stein v. Mobile,* 49 Ala. 362. The water works is entitled to have rates fixed which will permit it to earn the legal rate of interest on the investment after operating expenses are paid.—*Bry mer v. Butler Water Co.,* 179 Penn. 250, 251; 36 L. R. A. 260; *L. & N. R. R. Co. v. Brown,* 123 Fed. Rep. 946. The right to make rules and regulations reserved by the city in its contract has no reference to the making of rates. —*Owensboro Case,* 191 U. S. 370; *Detroit v. Detroit St. Ry.,* 184 U. S. 368. Where a demurrer is addressed to a bill as a whole and the complainant is entitled to any relief the demurrer will be overruled.—*Bresler v. Bloom,* 41 Sou. Rep. 1010; *Worthington v. Miller,* 134 Ala. 420; *George v. Central, etc., R. R.,* 101 Ala. 607, 621; *Moore v. Alabama National Bank,* 120 Ala. 89; *Burksdale v. Davis,* 114 Ala. 623; *Beall v. Lehman-Durr Co.,* 110 Ala.

446. Statutes are to be so construed, if possible, as to give some effect to every clause and not to place one section in antagonism to another.—*Brooks v. Mobile School Commission*, 31 Ala. 227; *ehmanL-Durr & Co. v. Robinson*, 59 Ala. 219, 233; *Ex parte Dunlap*, 71 Ala. 73. A municipal ordinance is a law within the meaning of the constitutional prohibition forbidding the passage of a law impairing the obligation of contracts.—*State v. Laclede aGs Light Co.*, 22 Am. St. Rep. 789; *Indianapolis v. Consumers Gas Co.*, 49 Am. St. Rep. 183; XXI A. & E. Enc. Law, 980, 981; ;McQuillans Municipal Ordinances, Sec. 233.

DENSON, J.—This bill is filed by the Bessemer Waterworks against the city of Bessemer. For the sake of brevity we shall in the opinion refer to the complainant as the "company" and to the respondent as the "ctiy." The company was incorporated in Jeeffrson county in 1890, under the general incorporation laws of this state as they are written in the Code of 1886, and at once began to supply the city and its inhabitants with water through a system of waterworks owned and operated by it. A new charter was established for the city by an act of the General Assembly approved December 13, 1900. Acts 1900-01, p. 441. The express power of the city in respect to supplying it and its inhabitants with water may be found in the twenty-ninth section of the charter, in this language: "The mayor and aldermen of the city of Bessemer shall have full and ample power, jurisdiction and authority   *   *   *   to make, erect and repair public wells, cisterns, and establish fire plugs and hydrants, and to make all needful provision by contract, ownership of waterworks, or otherwise, for the supply of the city and the citizens thereof with water; and the board of mayor and aldermen shall have the

power to regulate and prescribe the quality of water to be furnished, the rates to be charged therefor to the city and to private citizens and consumers within the city limits, and to pass all such by-laws, resolutions and ordinances as may be necessary and expedient to this end. * * * Provided, that the rates for water * * * that may be prescribed shall be reasonable."

It is fairly inferable from the averments of the bill, if not expressly averred therein, that in 1904 the company's plant, and necessarily the supply of water furnished by it, had come to be inadequate to meet the necessities of the city and its inhabitants. So in 1904 negotiations began between the company and the authorities of the city looking to the improvement of the company's system of waterworks and the betterment of its supplpy of water. The city proposed to the company that if it would improve its system of waterworks the city would enter into a contract with the company under which the company should supply the city and its inhabitants with water for a period of 30 years. The bill shows that the negotiations were pending for a period of 6 months, that during their pendency the cost of the necessary improvements was canvassed and considered by the company and the authorities of the city, and that in connection therewith accurate calculations were made by the agents of the company and of the city as to the rates that should be charged for water to be furnished by the company, in order to afford the company a fair and just return on the value of its plant, including the cost of the contemplated improvements and betterments. The result of the negotiations was an ordinance contract entered into on the 20th day of August, 1904, between the city and the company. The ordinance was adopted on the 2d day of August, 1904. In it the contract proposed by the company is set out in full, and it ordains an acceptance and

ratification of the provisions of the contract on behalf of the city, and authorizes and empowers the mayor to execute the contract in the name of and on behalf of the city. It was further ordained that the ordinance and contract should go into effect on the approval and publication thereof and the completion of all improvements provided for in section 3 of the contract. On the 20th of August, 1904, the ordinance contract was duly accepted and formally signed by the city, acting through the mayor, and by the company, through its president.

The bill shows that, relying on the contract as the binding agreement of the city, the company at an expense of $150,000 made the improvements provided for in the contract. By the terms of the ordinance the city granted the company the franchise and privilege of the use of the streets for the laying of its water mains, etc., and of supplying the city and the inhabitants thereof with water. The maximum rates at which water should be supplied are fixed by the terms of the contract, and the contract, in reference to its duration, provides as follows: "The term of this contract shall be 30 years from the date the contract goes into force, during which time all the provisions of this contract shall be binding on the parties hereto and remain in force." See Const. Ala. 1901, § 228. The contract is in 18 sections, and covers all matters usually embraced in such agreements; but those which have been specifically referred to are all that we need mention just now. On September 9, 1906, and after the company had been for some time supplying water under the contract, the mayor and aldermen of the city, without the consent of the company, passed an ordinance reducing the maximum rates which might be charged by firms and corporations furnishing or supplying water to the citizens of the city of Bessemer. This ordinance provides for the punishment by fine and im-

[City of Bessemer v. Bessemer City Water Works.]

prisonment, one or both, of any person, firm, or corporation, having a franchise to furnish water to the inhabitants of Bessemer, who shall violate any of its provisions. It also provides that any person, firm, or corporation, having a franchise from the city of Bessemer to furnish water to the inhabitants of the city, who violates the ordinance, shall forfeit such franchise and all rights thereunder. But for the injunction, the ordinance, under the charter of the city, would have taken effect on the 30th of September, 1906. The passage of this ordinance was the cause of this litigation.

The bill was filed on the 29th of September, 1906, in the circuit court of Jefferson county, to enjoin the enforcement of the ordinance reducing the rates. On the exhibition of the bill to the judge of the Tenth judicial circuit, its prayer for a preliminary injunction was granted. The points of attack made on the ordinance by the bill are that the rates fixed therein are unreasonable and arbitrary, that it impairs the obligation of the company's contract with the city, that it deprives the company of its property without due process of law, and that it infringes complainant's franchise granted by the city. Motions to dismiss the bill for want of equity and because the complainant had a complete and adequate remedy at law, and to dissolve the injunction, on the same grounds and upon the additional ground (among others) that the bill sought to enjoin a threatened prosecution for a violation of the ordinance, were severally overruled; and a demurrer raising the same question as those presented by the motions, together with other questions respecting the sufficiency of the averments of the bill, was likewise overruled. This appeal is prosecuted from the decree overruling the motions and the demurrer.

26 R

In respect to the jurisdiction of the court, or, rather, to the question of complete and adequate remedy at law, section 638 of the Code of 1896 provides that the powers and jurisdiction of the chancery court (and the circuit court in this case sits as a court of chancery) extend "to all civil causes in which a plain and adequate remedy is not provided in the other tribunals." As a general proposition it is well and conclusively settled by this court that "courts of equity are without power to enjoin the commission of threatened crimes on the one hand, and to enjoin threatened prosecutions for the commission of alleged crimes on the other; that violations of state laws and violations of penal municipal ordinances, and prosecutions for both stand upon the same footing in this connection; and that it is wholly immaterial that the statute or ordinance for the violation of which prosecution is threatened is absolutely void."—*Brown v. Mayor and Aldermen of Birmingham,* 140 Ala. 590, 37 South. 173, and authorities there cited; *Old Dominion Co. v. Powers,* 140 Ala. 220, 37 South. 195; *Weller v. City of Gadsden,* 141 Ala. 642, 662, 37 South. 682; *City Council of Montgomery v. West,* 40 South. 215. But it is insisted that the case made by the present bill presents an exception to the general proposition, in this: that the privilege granted the company under the contract of August 20, 1904, including the right to charge for water supplied at prices not exceeding the maxima fixed by that contract, is a vested franchise, and the enforcement of the ordinance reducing those rates would seriously impair that franchise and the city's contractual obligations.

The jurisdiction of equity to protect a vested franchise from unlawful invasion or disturbance, upon the ground of irreparable injury, or such injury as cannot be adequately estimated in damages at law, seems to be recognized by our decisions.—*Moses v. Mayor, etc.,* 52

Ala. 198; *Port of Mobile v. L. & N. R. R. Co.,* 84 Ala. 115, 123, 4 South. 106, 5 Am. St. Rep. 342; ; *Forcheimer v. Port of Mobile,* 84 Ala. 126, 4 South. 112; *N. C. & St. L. Ry. v. City of Attalla,* 118 Ala. 362, 24 South. 450; *Brown v. Mayor and Aldermen of Birmingham,* 140 Ala. 590, 601, 37 South. 173. See, also, *City of Rushville. v. Rushville Natural Gas Co.,* 132 Ind. 575, 28 N. E. 853, 15 L. R. A. 321; *South Covington Street R. Co. v. Berry,* 93 Ky. 43, 18 S. W. 1026, 15 L. R. A. 604, 40 Am. St. Rep. 161; *Georgia Packing Co. v. Macon* (C. C.) 60 Fed. 774, p2 L. R. A. 775; *Deems v. Baltimore,* 80 Md. 164, 30 Atl. *48, 26 L. R. A. 541, 45 Am. St. Rep. 339; *Farmer v. St. Paul,* 65 Minn. 176, 67 N. W. 990, 33 L. R. A. 199; *Cicero Lumber Co. v. Cicero,* 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155; *City of Los Angeles v. Los Angeles City Waterworks,* 177 U. S. 58, 20 Sup. Ct. 736, 44 L. Ed. 886; *Aqua Pura Co. v. Las Vegas,* 10 N. M. 6, 60 Pac. 208, 50 L. R. A. 224, 230. Relief, however, is granted in cases which come within the exception, not against the void ordinance, but against the wrongful act which threatens invasion of right.—*Weller v. City of Gadsden,* 141 Ala. 642, 663, 37 South. 682. If there is doubt as to the right claimed by the company, or if it is uncertain whether the acts complained of are infractions of it, a court of equity should not interfere.—52 Ala. 198. It is expressly charged in the bill on behalf of the company that the enforcement of the ordinance reducing the rates would be an impairment of the obligations of the ordinance contract, and hence a violation of the Constitution of the United States. The insistences of the city, in response to the charges made in the bill, are that the power to fix rates to be charged for water is a public attribute—a legislative power—continuing in its nature, and which from its nature is incapable of being alienated or restrained by the obligations of a contract, even

though express authority to do so be conferred by the Legislature upon the city; that even if this were not the case, to contract for rates to be paid for a definite term required authority from the Legislture; that no such grant to the city was conferred by its charter, because, albeit the charter of the city gave it power to contract for a supply of water, and expressly conferred authority to prescribe and regulate the rates to be charged therefor, this did not give the right to fix the rates to be paid for the water during the entire life of the contract—"the argument being that the power to contract for a definite time is one thing, and the fixing of rates for the same time for the water contracted for is another and different thing."

Assuming, then, for argument's sake, that the power conferred by the Legislature on the city to make all needful provision by contract for the supply of the city and the citizens thereof with water, included the power to fix water rates for a stated period in such contract, the argument that the contract in respect to rates is void must be, and is, based upon the theory that fixing rates is within the police power, and may be controlled, managed, or abrogated at the pleasure of the board of mayor and aldermen of the city, and that the Legislature was without power to authorize the city to suspend such power by contract. There is no express limitation in the Constitution of Alabama, restricting the power of the Legislature to authorize a city to contract for water and in such contract to agree upon the rates to be charged by the water company for water to be supplied to the city and its inhabitants; and the decisions of the Supreme Court of the United States are in harmony to the effect that, while the police power is one that remains constantly under the control of the legislative authority, and that a city council can neither bind itself nor its succes-

sors to contracts prejudicial to the peace, good order,
health, safety, or morals of its inhabitants, yet it is in
reference to cases of the class named that contracts may
not be made. And "if a contract be objectionable in it-
self upon these grounds, or if it becomes so in its execu-
tion, the municipality may, in the exercise of its police
power, regulate the manner in which it may be carried
out, or may abrogate it entirely, upon the principle that
it cannot bind itself to any course of action which shall
prove deleterious to the health or morals of its inhabit-
ants. In such case an appeal to the contract clause of
the Constitution is ineffectual.   *   *   *   But where a
contract for a supply of water is innocuous in itself, and
is carried out with due regard to the good order of the
city and the health of its inhabitants, the police power
cannot be invoked to abrogate or impair it." A careful
reading of the cases will disclose that a distinction is
clearly drawn by the Supreme Court between cases
where the grant has been claimed to confer privileges in-
jurious to public safety, public morals, or public health,
and those where they compensated persons for reforming
public service. In the former the police power remains
intact, and may be applied with all its vigor, while in the
latter the city cannot justify a repudiation of its solemn
engagements by the claim that the police power cannot
be diminished or suspended. In the latter category falls
the contract we have in hand, and the insistence that the
city, even though authorized by the Legislature to bind
itself by an irrevocable contract not to regulate water
rates, cannot do so, because the power to regulate rates
is a continuing legislative power—cannot be sustained.
—*Los Angeles v. Los Angeles City Water Co.,* 177 U. S.
558, 20 Sup. Ct. 736, 44 L. Ed. 886; *Walla Walla v.
Walla Walla Water Co.,* 172 U. S. 7, 19 Sup. Ct. 77, 43
L. Ed. 344; *New Orleans Gas Co. v. Louisiana Light &*

*Heat Co.,* 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; *New Orleans Waterworks Co. v. Rivers,* 115 U. S. 674, 6 Sup. Ct. 273, 29 L. Ed. 525; *Vicksburg v. Vicksburg Waterworks Co.,* 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102; *Freeport Water Co. v. City of Freeport,* 180 U. S. 587, 21 Sup. Ct. 493, 45 L. Ed. 679; *Omaha Water Co. v. City of Omaha,* 147 Fed. 1, 77 C. C. A. 267; *Pingree v. Michigan Central R. R. Co.,* 118 Mich. 314, 76 N. W. 635, 53 L. R. A. 274; *Crosby v. City Council of Montgomery,* 108 Ala. 498, 18 South. 723.

In keeping with the principles above announced, our own court has held that a city, in making a contract for water to be supplied to itself and its inhabitants, is not in the exercise of its governmental, but of its proprietary or business, powers, and is governed by the rules applicable to business corporations; the purpose in making the contract being, not to govern its inhabitants, but to obtain a public benefit for the city itself and its inhabitants. But it must be observed that in neither of our cases was the question of the continuing authority of the city to fix rates necessarily or directly involved.— *Greenville v. Greenville Waterworks Co.,* 125 Ala. 625, 27 South. 764; *Weller v. City of Gadsden,* 141 Ala. 642, 658, 37 South. 682. See, also, 1 Dill. Mun. Corp. 3d Ed.) §§ 26, 27, 66, and cases cited in the notes; *Illinois Trust & Savings Bank v. Arkansas City,* 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; *Little Falls Electric & Wire Co. v. Little Falls* (C. C.) 102 Fed. 663; *Omaha v. City of Omaha,* 147 Fed. 1, 77 C. C. A. 267. The conclusion announced in no wise conflicts with the case of *Mayor and Aldermen, etc., v. Birmingham Water Co.,* 139 Ala. 531, 36 South. 614, 101 Am. St. Rep. 49, in which it is held that the city of Birmingham cannot bind itself by contract as to the license tax to be paid by the water company for doing business.

The question as to the power of the city at common law to fix by ordinance the price at which water shall be supplied to consumers need not be considered, as that authority is expressly conferred by the city's charter.— *In re Pryor,* 55 Kan. 724, 41 Pac. 985, 29 L. R. A. 398, 49 Am. St. Rep. 280. Notwithstanding we have reached the conclusion that a city may by contract fix rates at which water shall be supplied for a definite period, and in this way suspend its power to fix rates during the period prescribed in the contract, we have, in doing so, gone upon the assumption that the Legislature has conferred the authority on the city to so limit its power. But in this case the city denies that the Legislature conferred on it any such authority, and so we are brought to a consideration of that question. As the contention of the company places a contractual limitation on the power of the city, presumably to be exercised for the public benefit, we must, in interpreting the charter power, resolve doubts in favor of the city's power to regulate and fix rates by ordinance; "in other words, that no contract limitation on the powers of government can be upheld by mere implication, or sustained if there be doubt on the subject. The existence of such contract limitation must arise clearly and by express intendment." This is but another way of stating the rule that the power of municipal corporations is measured by the legislative grant, and they can exercise such powers only as are expressly granted, or are necessarily implied from the powers expressly conferred.—1 Dill. Mun. Corp. (2d Ed.) § 55.

With the rule as stated in view, we must determine whether or not the city, under its charter, had the authority contended for by the company and denied by the city, to wit, the authority to contract for rates at which water should be supplied to its citizens for a definite

period, and, of consequence, to suspend its charter power in respect to the regulation of rates during such fixed period. Confessedly the city by the charter is expressly authorized to make all needful provisions by contract for a supply of water for itself and its citizens, and, in view of section 228 of the Constitution, no objection can be taken to the time period prescribed in the ordinance contract. But the argument of the city is that the right to contract for a supply of water for 30 years is an independent proposition, and does not include the power to agree upon the sum to be paid for it for that period. In other words, where authority is given to contract for a supply of water for a fixed period, this power to contract does not, as a necessary incident, import authority also to agree upon the rates for the same period. "From the nature of the subject-matter, it is essential that the agreement for a water supply should contain something more than the obligation of the water company to supply water." What something is more essential or indispensable than the fixing for a definite period of the rates at which the water should be supplied to the city and its inhabitants, we confess it is hard to conceive. The supply of water to the city and its inhabitants was a matter of serious consideration. It was no small enterprise. It involved a large outlay of money. Indeed, to meet this corporate duty with waterworks of its own was doubtless beyond the financial ability of the city. Nevertheless we are warranted in inferring that the wants of the city, with its 10,000 inhabitants, in respect to the supply of water, were imperative. The Legislature was applied to, and it said to the city, by its charter: "You shall have full and ample power, jurisdiction, and authority to make all needful provision by contract to supply yourself and your inhabitants with water."

To assume that the Legislature in making this grant of power intended to withhold authority to fix the rates, would be to impute to the lawmakers ignorance of the essential elements of a contract.  How could it be expected that the city could procure any person, firm, or corporation to embark with money, time, and skill in an enterprise ample to accommodate the public necessities upon an uncertain stipulation as to what the renumeration would be?  Is it not more rational, and more in keeping with business principles, to say that the Legislature necessarily intended, by the grant, to confer on the city authority to award privileges such as would justify some responsible person, firm, or corporation in the expenditure of so large a sum of money?  And why is not the privilege to charge not exceeding a fixed rate during the life of the contract one of the "needful provisions" and within the legislative intention?  As said by Sanborn, J., in *Omaha v. City of Omaha,* 147 Fed. 1, 13, 77 C. C. R. 267, 279 : "The main purpose of city waterworks is revenue derived from private consumers of water.  The rates which they pay absolutely determine the financial success or failure of a city water company's enterprise.  The term or regulation in a contract for the construction and operation of waterworks which more than any other conditions the nature and the prospect of the undertaking, is that which fixes the rates which the owner may collect of private consumers. These are matters of common knowledge.  The members of the Legislature could not have been ignorant when they granted to this city the power to agree upon terms and regulations upon which the works should be built and operated, and it is incredible that they intended to except from this general grant the authority to agree upon the cardinal term which alone conditions the success of the entire undertaking.  They make no such exception,

and that raises a conclusive presumption that they intended to make none; and it is not the province of the court to do so." In the Omaha Case, the city was given the power "to contract with and procure individuals and incorporations to construct and maintain waterworks on such terms and under such regulations as may be agreed on." The city made a contract which provided the rates should not exceed certain maxima set forth in the contract. It was held that the city could not by subsequent ordinance nullify its contract.

But it is insisted that power and authority is conferred on the board of mayor and aldermen to regulate and prescribe the rates to be charged for water by such by-laws, resolutions, and ordinances as may be necessary and expedient, in the same section of the charter that the power to contract is found, and is separated from the clause containing the power to contract only by a semicolon, and that it is as much a part of the contract made with the company as any express provision in it; that the contract was made with reference to it. The argument is that it is, in legal effect, inserted in the contract that the rates herein designated as maximum rates are subject to change at any time by the board of mayor and aldermen, with the limitation on the power of that board that the rates shall not be made unreasonable. If the company had notice of the power to fix rates, it also had notice of the city's authority to contract in reference to rates if such power existed. Cannot operation be found for the power to regulate rates without its conflicting with contract rates? We think it can. As is suggested in the brief of counsel for the company (appellee) : "For example, at the expiration of a contract it might be desirable to regulate rates or to regulate them for uses not mentioned in a contract.—*Cedar Rapids Water Co. v. City of Cedar Rapids*, 91 N. W. 1081, 118 Iowa, 234."

[City of Bessemer v. Bessemer City Water Works.]

And if the power is conferred on it to embrace in the contract maximum rates, by making the contract the rates are regulated. Furthermore, the charter provides that the city may own and operate waterworks, and the contract has in it a provision whereby the city may eventually become the owner of the company's plant. On the happening of either event the field for the operation of the power to regulate rates is left wide open. If the city of Bessemer is incumbered with an inalienable right to fix rates notwithstanding its contracts, then the power given it to contract for a water supply might prove entirely futile, because it is common knowledge that rates at fixed amounts are the desideratum—the consideration for such contracts—or, as suggested by Sanborn, J., in the case quoted from, supra, the rates alone condition the success of the entire undertaking. In the case of *Capital City Water Co. v. City Council of Montgomery,* 92 Ala. 367, 371, 376, 9 South. 348, the water company contracted to supply water to the city and its citizens at rates fixed; the contract being made pursuant to following charter power: "To establish or purchase and maintain waterworks, or contract for the furnishing of water for fully supplying the city and its inhabitants with wholesome water, and to regulate the manner and rate of furnishing water to private consumers." The court, through McClellan, J., said: "To the exerecise of this power it is manifestly essential that the city should have authority with respect to making a contract for the supply of water to incur just such liabilities as it has assumed."

We cannot see that the power to fix rates given in the same section of the charter should be held to be an inhibition on the city's power to contract rates, if such power to contract can be necessarily implied from the power to contract for the supply of water; and our con-

clusion is that the right of the city to fix maximum rates, if not expressly given, arises by necessary implication from the language in which the charter power to contract is clothed. The many cases cited by counsel for appellant have been read, but to undertake a review of them would extend this opinion to too great length. It suffices to say of these that each was decided on its own peculiar facts, and that upon comparison of any with the facts of the case in hand, we do not think the conclusion will be in conflict with that we have here reached. In the case of *Omaha Water Co. v. City of Omaha, supra,* will be found a very able and instructive review of the cases bearing on this subject, and the reasoning there employed in differentiating the cases is appropriate to the case made by this record. See, also, *Detroit v. Detroit Citizens' St. R. Co.,* 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592.

On the foregoing considerations the conclusion is that the company has a valid contract with the city, and under it a vested right to charge for water that may be supplied at rates not exceeding the maxima named therein, and that the ordinance which attempts to reduce these rates impairs the obligation of the contract. It follows that the bill on this ground has equity in it, and it is unnecessary to consider whether or not the bill shows that the reduced rates are unreasonable or confiscatory. The decree of the chancellor must be affirmed.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.