# Gambill *v.* Endrich Bros., *et al.*

*Action to Recover License Tax.*

1. *Municipal corporations; charter; licenses for sale of liquors.—* Under the provisions of the ordinances of the city of Birmingham (Acts 1898-9, page 1391), the municipality is granted "Full power and authority" to license, regulate or restrain the sale of spirituous, vinous or malt liquors, and an ordinance enacted by the municipality which segregates lager beer from spirituous, vinous or other malt liquors, and requires a separate license for selling beer by the wholesale, is within the power granted by the charter and is valid. (MCCLELLAN, C. J., *dissenting.*)

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. W. FERGUSON.

This action was brought by the appellees against the appellant, as license inspector of the city of Birmingham, to recover a license tax which they were forced to pay, under an ordinance of the city of Birmingham, for selling

lager beer at wholesale. The trial was had by the court below on an agreed statement of facts, and a judgment was rendered in favor of the plaintiffs, from which the present appeal is prosecuted.

The facts of the case necessary to an understanding of the decision are sufficiently set forth in the opinion.

E. D. SMITH, for appellant.—Under the charter of the city of Birmingham, it is competent for the city council to levy a license tax on the sale of beer by wholesale, independent of any such tax on the sale of other malt liquors.—Acts 1898-9, p. 1391; *Mobile v. Twille,* 3 Ala. 187; *Singer Mfg. Co.'s case,* 35 L. R. A. 495; *Craft's case,* 94 Ala. 156; *Richards' case,* 98 Ala. 594; 25 A. & E. Ency. Law (2nd ed.), 490; *Morgan v. Com.,* 35 S. E. Rep. 438.

RICHARD H. FRIES, *contra.*—A wholesale dealer in spirituous, vinous and malt liquors has the right, under the license, to sell beer at wholesale.—In *Allred v. State,* 89 Ala. 112, Chief Justice McCLELLAN said, "The term 'malt liquor' embraces porter, ale, *beer* and the like."

In *Watson v. the State,* 55 Ala. 159; *Tinker v. State,* 90 Ala. 647; *Samson v. State,* 107 Ala. 79, and 19 A. & E. Ency. of Law, (2d ed.), p. 705 and notes, it was held that the term "Malt Liquor" necessarily includes beer.

"A person who has taken out one license for a certain business cannot be compelled to take out additional license for anything which constitutes an essential part of such business."—21 A. & E. Ency. Law (2nd ed.), 814; *Com. v. Fowler,* 96 Ky. 166; *Hotelling v. Chicago,* 66 Ill. App. 289; *Board v. Gas Co.,* 64 Ala. 269; *Mobile v. Craft,* 94 Ala. 156; *Mobile v. Richard,* 98 Ala. 594; *Halzstein v. Tuscaloosa,* 124 Ala. 636; *Ex parte Sims,* (Fla.) 25 So. Rep. 280; *Montgomery v. Kelly,* (in MS.,—decided Feb. 1, 1905.)

DOWDELL, J.—This is a suit brought by the appellees to recover back a license tax, which they were forced to pay under an ordinance of the city of Birmingham for selling lager beer at wholesale. The trial was had by the court below on an agreed statement of facts, and a judgment was rendered in favor of the plaintiffs, from which the present appeal is prosecuted.

The question presented in this case is whether or not the municipality of the city of Birmingham, under its charter, has the power and authority to segregate lager beer from spirituous, vinous or malt liquors in prescribing and fixing license "For the business, occupations and professions in the city of Birmingham," and require a separate license for selling beer by the wholesale.

In the statement of the facts on which the case was tried, the ordinances, in so far as they pertain to the question, are set out as follows; "ANNUAL LICENSE ORDINANCE."—"An ordinance to prescribe and fix license for the businesses, occupations and professions in the city of Birmingham, Alabama, for the year 1903."

"Section 1: Be it ordained by the Mayor and Aldermen of Birmingham that the following be and is hereby declared to be the schedule of license for the year 1903, for the divers businesses, occupations, vocations, and professions engaged in or carried on in the city of Birmingham, Alabama, and each and every person, firm, company or corporation engaging in any of the businesses, vocations, occupations or professions herein enumerated, shall pay for and take out such license and in such sums as are herein provided, to-wit:"

"40. BREWER. Each person, firm or corporation, brewer, brewery, or agency for brewery, selling beer by wholesale not including liquors, $300.00."

"230. LIQUORS. Each wholesale dealer in spirituous, vinous or malt, any or all, not including beer, $400.00."

The provisions of the charter of the city of Birmingham (Acts of 1898-9, page 1319), in so far as pertinent here, are as follows: "Sec. 25." "Be it further enacted, That the said board of mayor and aldermen shall have full power and authority  *  *  *  (Par. 5) to license, tax, regulate and restrain,  *  *  *  *  the selling, retailing, wholesaling or giving away of vinous, malt, spirituous or intoxicating liquors; and to close houses and places for the sale of intoxicating liquors when, in the opinion of the board, the public safety and peace may require it; and to authorize the mayor, by proclamation, to cause houses and places for the sale of intoxicating liquors to be closed for a period of not longer than the next regular meeting of the board, whenever, in his opin-

ion, the public peace and safety may require it, and the board shall have power to revoke and cancel any license issued for the sale of spirituous, vinous or malt liquors, or the license of any house or place of public entertain-ment, when, in the opinion of the board, the public safety, peace, good order or decency may require."

"Par. 34." "That the board of mayor and aldermen shall have the power to license, tax, regulate or stop such exhibitions, business, vocations, occupations or pro-fessions as are now licensed by the State, as well as other exhibitions, business, vocations, occupations or profes-sions which are now or which may hereafter be engaged in or carried on in said city, in such sums as the board may fix, and to punish all persons who do business in said city without having taken out license required by laws and ordinances, and to impose and collect such li-censes; but said city shall not license any business, exhi-bitions, professions, vocation or occupation, the engaging or carrying on of which is forbidden by State laws, *The power to license in this charter conferred may be used in the exercise of the police powers, as well as for the purpose of raising revenue, one or both."* (Italics are ours.)

"Sec. 36." "Be it further enacted, That any person dealing in two or more of the articles or engaging in two or more of the businesses, vocations, callings or profes-sions for which a license is or may be required for each, such person shall pay for and take out a license for each line of business, vocation, calling or profession."

In the discussion of the question presented, it may be well here to state, that it is a well settled rule of law, that a municipal corporation has only such powers as are expressly conferred by its charter, or by some other leg-islative enactment, or which are necessarily implied from the general objects and purposes of the municipality, or implied from some other power expressly granted by the legislature. It may be also stated, that the power to tax is never implied in this State, and further, that as a general rule, when a license to do a general business has been exacted and paid, another license cannot be required and collected for the doing of a particular act or series of acts constituting an integral part of such general bus-

iness. So, beer being a malt liquor, a license to sell malt liquors generally would give the right to sell beer as well as ale, porter and the like. The solution of the question here, however, is to be determined by the power granted in the charter of the city.

It is to be remembered that we are dealing with a subject-matter that is not only within the taxing power of the State for purposes of revenue, but is also within the police power of the State to license, regulate, or prohibit. That the legislature has the right to license, regulate, restrain and prohibit the sale of vinous, spirituous or malt liquors in this State, is a proposition of law not to be doubted. The legislative power to deal with this subject is unlimited and unrestricted. It is entirely competent for the legislature to require a separate license for the sale of each of the articles of vinous liquors, spirituous liquors, and malt liquors, or to license one or more and prohibit the sale of the other, or to license one kind of spirituous liquor, as for instance brandy, and prohibit the sale of another kind, such as whiskey, or to license one kind of malt liquors, as for instance lager beer, and prohibit the sale of another kind.

Because of the evils which attend the business of selling spirituous, vinous or malt liquors, and the well recognized danger there is, in the carrying on of the business, to the peace and good order of the community, the exercise of the police powers of the State becomes necessary. The very necessity for the exercise of this police power in connection with such business, for the preservation of public safety, peace and good order, as well as for the promotion of public morals, distinguishes this particular business from that of store-keeper generally. For this reason, the business of selling liquors is an exception under the general rule above stated, that, when a license to do a general business has been exacted and paid, another license cannot be required and collected for the doing of a particular act or series of acts constituting an integral part of such general business. No one would for a moment question the power of the State to revoke at pleasure a license to sell liquor. So we repeat what we have said above that in regulating the sale of spirituous, vinous or malt liquors, and in the requirement

[Gambill v. Endrich Bros., *et al.*]

of a license in the doing of the business, the legislature has the power to segregate and require a separate license for each article. If the legislature has this power, the right to confer by grant in the charter on a municipality cannot be doubted, even though the general statutes of the State in reference to licenses and the raising of revenue do not do so.—*Ex parte Cowert,* 92 Ala. 94, 101. Has it been done here?

The charter grants to the municipality "Full power and authority" to license, regulate or restrain the sale of spirituous, vinous or malt liquors. By this the municipality is given the power to prohibit the sale of all these articles; and if all, why not any one? The charter further provides that, "The power to license in this charter conferred, may be used in the exercise of the police powers, as well as for the purpose of raising revenue, one or both." Can it be said that it is not a regulation in the traffic, when a different and separate license is required for the sale of separate articles in a business, and therefore, an exercise of police power? We think not. And, if an exercise of the police power, it is within the grant of the charter, and it is of no consequence that it also operates to raise revenue.

The charter further provides, "That any person dealing in two or more of the articles or engaging in two or more of the businesses, etc., for which a license is or may be required for each, such person shall pay for and take out a license for each line of business," etc. That a license may be required for the sale of each of the articles of whiskey, wine and beer, as said before, we think entirely within legislative competency. This power is granted in the above charter provision.

Our conclusion is, that the ordinance in question comes within the power granted by the charter, and is valid. Our attention has not been directed to any decision where the same powers were granted in the charter as in the present case contrary to the views we have expressed. The cases cited in brief of counsel apply to storekeepers or businesses, other than vendors of spirituous, vinous or malt liquors, and where the purpose of the tax is for revenue only and where the exercise of the police power is not involved.

[K. C. M. & B. R. R. Co. v. Ferguson, Admrx.]

There is nothing in the case of *Mobile v. Craft*, 94 Ala. 156, or in *Mobile v. Richards*, 98 Ala. 594, opposed to the principles we have stated. In the case of *Holtzstein v. Tuscaloosa*, 134 Ala. 636, the charter provisions of the city of Tuscaloosa were different from those of the charter of the city of Birmingham, and the exercise of the police power of the municipality was not in question.

In the case of *Ex parte Sims*, 25 So. Rep. (Fla.) 280, which is more like the present case than any other that is cited, the ordinance assailed was sought to be upheld under the general statutes of the state of Florida. These statutes had reference to tax for the purpose of revenue only, and were unlike the provisions of the charter here, in the powers conferred on the municipality.

From our view of the case, it follows that the judgment of the city court must be reversed and a judgment will be here rendered in favor of the appellant, defendant in the court below.

Reversed and rendered.

HARALSON, TYSON, SIMPSON, ANDERSON and DENSON, J.J., concurring.

MCCLELLAN, C. J., dissenting.