# Cleveland School Furniture Co., v. City of Greenville.

### Assumpsit.

(Decided Jan. 20, 1906.  41 So. Rep. 862.)

1. *Municipal Corporations; Powers.*—A municipal corporation is authorized to exercise only such powers as are granted in express words, those necessarily or fairly implied from or incident to powers expressly granted, or those indispensable, as distinguished from convenient, to the declared objects and purposes of the corporation.

2. *Same; School Furnishings; Liability of City; Notes.*—In the absence of authority granted by the charter of the city in respect to its public schools, the act of February 25th, 1887 (Acts 1886-81, p. 629,) and the act of February 28th, 1887, (Acts 1886-87, p. 1009) conferred no authority upon the city of Greenville to pledge its general revenue for the payment of furniture purchased to fit up a school, and a note executed by the city for such purpose was ultra vires and unenforceable.

3. *Same; Estoppel.*—The city having no power to bind its general revenue for the payment of furniture purchased for school purpose, the retention and use of the furniture by the school does not estop the city from denying its liability on the note executed by it for said school furniture.—(TYSON, DOWDELL and SIMPSON, JJ., dissent.)

APPEAL from Butler Circuit Court.

Heard before Hon. J. C. RICHARDSON.

Action by the Cleveland School Furniture Company against the city of Greenville.

This was an action on a promissory note for the sum of $790, executed by defendant on the 10th day of July, 1896, due and payable five years after date, with interest payable annually from the 7th day of January, 1895. The pleas were the general issue and, first, want of consideration; ultra vires; that the debt was of one Perdue, and not of the city; that it was for school furniture fur-

nished the school district of the city of Greenville, and was therefore without consideration. The plaintiff filed replication setting up the facts of the furnishing of the furniture to the schools, the use of it by the citizens of Greenville, the issuance of the warrant by the city to Perdue in payment therefor, a transfer of the warrant so issued to Perdue by him to appellant, the presentation of the warrant so issued to the city council for payment, the making of the notes sued on by the city council by ordinance or resolution, the surrender of the warrant to the city council upon the delivery of the note, the retention of the warrant so issued to Perdue by the city council, and the failure to pay. Demurrers were sustained to this replication. The facts disclosed by the record are that the city council of Greenville, under the authority of an act of the Legislature, issued bonds for the purpose of securing a school lot, erecting school buildings thereon, and furnishing the same. The bonds were sold and put in the hands of a special treasurer. A lot was purchased, and a contract for building and furnishing a school house was let to James H. Perdue. Perdue purchased the furniture from appellant and put it in the school house. The city council issued warrants on the special treasurer in favor of Perdue, one for $790, which was transferred by Perdue to appellants in payment of the debt for the furniture. The warrant was presented for payment, and the reply was, "No funds available for that purpose." The council then passed a resolution authorizing the execution of the note sued on. When the note was executed the warrant was delivered to the city council, and has ever since been retained by the city. A payment of eighty odd dollars was made upon it, and no further payments have ever been made. At the conclusion of the evidence, the court gave the general affirmative charge for defendant. There was verdict and judgment for defendant, and the plaintiff appeals.

D. M. POWELL, for appellant.—The incorporation of the city of Greenville is found in Acts 1870-71, p. 121. The act authorizing the city to issue bonds for school im-

provement, etc., is found in the Acts of 1886-87, p. 629.
The evidence discloses that the defendant did contract
for the erection and furnishing of a public school build-
ing, and that Perdue was the contractor and was paid
by warrants issued by the city council.   If Perdue's con-
tract was valid, the city had a right to issue the war-
rants to Perdue, and he had a right to assign them in
payment of his indebtedness.—*Allen v. Lafayette*, 89
Ala. 641; 1 Dillon Mun. Corp. (4th Ed.) Sec. 487 and
note.   Where a municipal corporation has lawfully con-
tracted a debt, it has implied power, unless restricted by
charter or statute, to evidence the same by bills, bonds
or note.—*Williamsport v. Commonwealth*, 84 Pa. St.
487; 1 Dillon Mun. Corp. (4th Ed.) Sec. 120.   There
was no statute restraining the city of Greenville from
executing the note sued on.   It was given for a valid
debt, and subject to any lawful defense, was a binding ob-
ligation.—*Nashville v. Ray*, 19 Wall. 478; *Hackettstown
v. Swackheimer*, 37 N. J. Law, 198; *Holmes v. Shreve-
port*, 31 Fed. 113; 21 Am. & Eng. Ency. of Law, (2nd
Ed.) 31.   The mere fact that the money out of which
Perdue was to be paid was a special fund did not ren-
der it any less a debt.—*Porter, et al. v. Perdue*, 105 Ala.
297.   The court takes judicial knowledge of the charter
of the city, and the acts of February 25th and 28th,,
1887.—*Wetumpka v. Wetumpka Wharf Co.*, 63 Ala. 611.
When a municipal corporation retains the benefits of the
contract, it is estopped from denying its validity.—2
Beach on Contract, Section 1163; *Corpus Christi v. Cen-
tral Wharf Co.*, 8 Tex. Civ. Appeal, 94.

R. L. HARMON, for appellee.—A municipal corporation
cannot be rendered liable on contract unless the contract
is made in the manner prescribed by the statutes or char-
ter.—20 Am. & Eng. Ency. of Law, (2nd Ed.) 1157.   The
city had no right to execute a contract under any other
name than its corporate name.—20 Am. & Eng. Ency.
of Law, (2nd Ed.) 1162-1163, note 6 on page 1162 and
note 4, p. 1163.   There being no proof showing that the
note introduced in evidence was executed by the city of

Greenville, there is a fatal variance between the complaint and the note introduced in evidence as signed.—*Gayle v. Hudson*, 10 Ala. 116. A municipal corporation has no authority to contract a debt for any purpose other than such as is necessary for the government, and to be used for municipal purposes in the performance of the usual duty and functions of the corporation.—*New Decatur v. Berry*, 90 Ala. 432; *N. O. M. & C. Ry. Co. v. Dunn*, 51 Ala. 128; *Webb v. City of Demopolis*, 95 Ala. 116. The building and furnishing a school house was not a necessary indispensable incident to municipal government.—Authorities supra; *Wolff v. Taylor*, 98 Ala. 254. The debt could only be paid out of the special fund derived from the sale of the bond authorized by the act.—Dillon on Mun. Corp. Sec. 505; Smith Modern Law Corp. Vol. 1, Section 739 and pages 728 to 733; *Tippecanoe v. Cox*, 6 Ind. 401; 21 Am. & Eng. Ency. of Law, pp. 22 and 23. The act is void and confers no authority on the city of Greenville to do anything in its corporate name.—*Wolff v. Taylor, supra*. The act is also violative of Section 55, Art. 4, Const. 1875.—*City of Eufaula v. McNabb*, 67 Ala. 588. It is not material what is the character of the object or how pressing the necessity, or what are the benefits that may flow to the city, if not within the purposes of the act of incorporation, there is want of power in the corporate authority.—*Garland v. Board of Revenue*, 87 Ala. 223; *Wolff v. Taylor and Webb v. City of Demopolis, supra*. The act is void in toto unless section 2 is stricken out, because violative of section 2, article 4, const. 1875.—*Wolff v. Taylor, supra; State v. So. Ry. Co.*, 115 Ala. 250; *Yahn v. Merritt*, 117 Ala. 485; *Sanders v. Elmore County*, 117 Ala. 543; *Pierce v. Elmore County*, 117 Ala. 561.

ANDERSON, J.—"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the

declared objects and purposes of the corporation, not simply convenient, but indispensable."—*New Decatur v. Berry,* 90 Ala. 432, 7 South. 838, 24 Am. St. Rep. 827; 1 Dillon on Munic. Corp. § 89; *Smith v. Newbern,* 70 N. C. 14, 16 Am. Rep. 766; *Cook County v. McCrea,* 93 Ill. 236; *Wetumpka v. Wetumpka Wharf Co.,* 63 Ala. 611; *Eufaula v. McNab,* 67 Ala. 590, 42 Am. Rep. 118; *City of Mobile v. Electric Street R. R.,* 141 Ala. 442, 38 South. 127. The city of Greenville had no authority to execute the note sued on or to make the debt, which it evidences, a legal charge against the general fund of the municipality. No such authority was given the municipality by its charter.—Acts 1870-71, p. 121. Nor by section 2950 of the Code of 1896 and Acts 1886-87, pp. 629, 1009. —*Police Jury v. Britton.* 15 Wall (U. S.) 556, 21 L. Ed. 251; *Blackman v. Lehman, Durr & Co.,* 63 Ala. 550, 35 Am. Rep. 57; *Garland v. Board of Revenue,* 87 Ala. 223, 6 South. 402; *Wolff v. Taylor,* 98 Ala. 257, 13 South. 688; *Webb v. City of Demopolis,* 95 Ala. 131, 13 South. 289, 21 L. R. A. 62.

In deciding that the suit cannot be maintained against the municipality, we do not wish to be understood as holding that the claim in question could not be paid out of the fund provided by Acts 1886-87, p. 1012, § 10, under the direction of the board of education. Since the power to contract this debt was not granted in express words, we cannot hold that it is a power to be implied as incident to the objects and purposes of the corporation. Eduactional institutions are not regarded as necessarily belonging to municipal government. "They are important and contribute greatly to the well-being and prosperity of any town or city, as do public buildings, charitable institutions for taking care of the sick, and other like institutions, but all such are of a class and constitute subjects, not germane to municipal organization."—*Wolff v. Taylor,* 98 Ala. 254, 13 South. 688.

The matters set up in the replication as an estoppel are facts that should appeal to the moral sensibilities of the board of education, or even to parents, whose chil-

dren have and doubtless will continue to use the desks and seats, but cannot estop the defendant by acts of ratification from repudiating or disputing an ultra vires act or contract.—*Wetumpka v. Wetumpka Co., supra; Eufaula v. McNab,* 67 Ala. 588, 42 Am. Rep. 118.

The trial court committed no error upon the ruling on the pleading; and, as the special pleas were proven, the general affirmative charge was properly given for the defendant.

The judgment of the circuit court is affirmed.

MCCLELLAN, C. J., and HARALSON and DENSON, JJ., concur. TYSON, DOWDELL, and SIMPSON, JJ., dissent.

## ON REHEARING.

WEAKLEY, C. J.—When the majority opinion was promulgated, three of the justices dissented. Upon the application for rehearing, there remained an equal division among those justices who participated in the decision; and, as the fate of the appeal depended upon the conclusion the writer might reach, he has given the briefs of counsel careful consideration. The result is that he is unable to escape the conclusion at which the majority of the court arrived, as expressed in the opinion of Mr. Justice ANDERSON, however much he may desire the appellant to realize upon its claim. The reasoning by which he is led to this conclusion is the following:

This court has always strongly maintained the doctrine, both as to private and municipal corporations, that contracts made by or with them, outside the pale of their corporate authority, confer no right, and that neither the making of an ultra vires contract nor the receiving of its benefits estops the corporation from setting up its invalidity.—*Chewacla Lime Works v. Dismukes,* 87 Ala. 344, 6 South. 122, 5 L. R. A. 100; *Sherwood v. Alvis,* 83 Ala. 115, 3 South. 307, 3 Am. St. Rep. 695, and authorities there cited; *New Decatur v. Berry,* 90 Ala. 432, 7 South. 838, 24 Am. St. Rep. 827. In *Allen v. Intendent and Councilmen of Lafayette,* 89 Ala. 641, 8 South. 30, 9 L. R. A. 497, it was held that, although

the town had no authority to borrow money or issue warrants for its repayment, yet having by its charter express authority to maintain public schools and to purchase real estate for corporate purposes, and the borrowed money having been used to aid in paying for a school lot, the town was liable for the amount without reference to the warrant; and hence the decision was that a taxpayer could not in equity enjoin the collection of the warrant, which truly represented the amount of the lender's legal demand.   It was said in that case, as expressing the kernel of the decision, that the lender had "a valid demand against the town of Lafayette for the amount of money advanced by her, not because the corporate authorities agreed to pay it to her, but because they have legitimately used it for the benefit of the town, in a way and to an end fully authorized by its charter."

The charter of the city of Greenville conferred no authority in respect to public schools upon that municipality; and it is not contended that any such authority was conferred.   The right to recover is sought to be derived from the joint operation and effect of the act of February 25, 1887, which authorized the municipal authorities to issue bonds for the purpose of purchasing school lots, erecting school buildings, and furnishing the same (Acts 1886-87, p. 629), and of the act of February 28, 1887, to constitute the city of Greenville a separate school district, and to provide for the management of the public schools of the said district (Acts 1886-87, p. 1009.)   By the former act the proceeds of the bonds are set apart for the exclusive benefit of the schools, to be used for the purpose of purchasing lots, building school houses thereon, and furnishing the same; but there is an entire absence of any intention, manifested by the Legislature, to authorize the city to bind its general revenue for school furniture.   On the contrary, such intention is rather repelled by the specific provision made for such furniture out of the special fund to be raised, under the terms of the act.   By the second act, the board of education is given power, with the approval of the board of mayor and councilmen, to build and furnish

school houses. The act further inhibits the entering into any contract or the disbursement of any funds under its provisions except by the consent and under the direction and control of the city's governing board. The revenues and funds thus placed under the joint control of the mayor and councilmen and the board of education, for the benefit of the schools, are derived from a proportionate part of the public school fund coming to Butler county, the poll taxes collected within the school district, donations, if any were made, and special school taxes, collected from tax-payers of the city; and all funds devoted to school purposes in the school district of Greenville, whether derived from state, county, or city, are required by section 10 of the act above referred to (Acts 1886-87, p. 1012) to "be kept and accounted for separate and distinct from all other funds belonging to said city," to be disbused in such manner as the board of education should direct. So far, therefore, from finding a purpose to authorize the city to charge its general fund or revenue for school purposes, such as would result from awarding appellant a general judgment upon its note, there seems to the writer to have been a well-defined and well-guarded intention to provide and set apart a special fund or funds for the benefit of the schools, to be derived, not only from the sources just mentioned, but also from the proceeds of the sale of the school bonds. And this seems to have been well understood by Perdue, who provided the school furniture and who transferred his warrant to the appellant. The warrant was drawn on the special treasurer of the city, who had charge of the funds derived from the sale of the bonds; and the evidence of the mayor is undisputed that it was out of these funds that Perdue was to be paid for erecting and furnishing the school building. The appellant as the transferee of the warrant had no higher right than Perdue. In executing a note for this warrant, the city authorities exceeded their powers. No estoppel resting on the municipality from having executed the note, nor from the retention and use of the furniture in the public school, appellant was not entitled to recover.

[Cleveland School Furniture Co. v. City of Greenville.]

Application for rehearing overruled.

HARALSON, ANDERSON and DENSON, JJ concur.

TYSON, J. (dissenting.)—The erroneous conclusion reached by a majority of the court is made plain by the fact that the act authorizing the issue of bonds by the city of Greenville empowers that municipality to erect a school building and to furnish the same, and also authorizes the funds arising from the sale of bonds to be committed to the custody of its own officer, a special treasurer, who was required to execute a bond to the city for their safe keeping; and undoubtedly the power conferred by the act is just as effective as if it had been written in the charter of the city. It is wholly impracticable and unreasonable to suppose that the legislature intended that the municipality should construct and furnish the building in any other way than by contract. Indeed, this is the only method that could have been adopted for its erection and equipment . It could certainly not have been expected that its officers and agents were to perform the manual labor necessary to the construction of the house had they been sufficiently skilled as artisans to do so; and it is not comprehensible that the legislature entertained the thought that the city had the necessary material on hand, of which to build it, and the necessary furniture to put into it. It is therefore entirely clear that it was contemplated that the municipality was either to purchase the material and the furniture and to employ the labor necessary to erect the building, or that it was to make a contract, as it did, for its construction and furnishing.

So, then, whether the one or the other (and it was within the business discretion of the officers of municipality which of these methods they would adopt), the authority and power to construct is necessarily conferred upon the municipality. The authority to contract carries with it the power to bind the city to pay the contract price to the other contracting party; and this, of course, out of whatever fund the municipality may have available when the debt may mature. The fact that a special fund was

created by the sale of the bonds, in so far as the rights of the contractor to be compensated under the contract with the city is concerned, is of no consequence. That fund was provided simply to enable the city to discharge such obligations, which we have shown it had authority to assume, under the contract for erecting the building and equipping it. It is absurd to say that the contractor must lose the debt which the city legally owes to him because its officers, to whom the funds were confided, has misappropriated them. He was the trusted agent of the city, and not the contractor. It was the city's funds that he misappropriated, and not the contractor's. The city had the exclusive control over them, and the contractor had none. He could not have been paid without obtaining a warrant from the city on its treasurer. That officer would have been powerless to pay him without some authority from the municipality. And had he and the contractor appropriated any part of the fund, without authority from the city, even to the discharge of the debt legally due the latter by the city under the contract with him, this would have, perhaps, made the treasurer guilty of embezzlement.—§ 4668 of the code.

It could, with equal plausibility, be said that a city issuing bonds to be paid out of a fund to be raised by special taxation for that purpose cannot be made to pay them, if its treasurer should misappropriate the fund after its collection and deposit with him.

DOWDELL and SIMPSON, JJ., concur in these views.