(100 South. 490)

## ALABAMA WATER CO. v. CITY OF ATTALLA. (7 Div. 451.)

(Supreme Court of Alabama. May 15, 1924.)

1. Public service commissions ⟨⟩ 19(2)—Order sustained on collateral attack unless void.

Generally, an order of the Public Service Commission under Acts Sp. Sess. 1920, p. 38, will be sustained on collateral attack unless void.

**2. Waters and water courses ⬛203(12)—Injunction suit held collateral attack on Public Service Commission's rate order.**

Suit to enjoin collection of water rate fixed by Public Service Commission under Acts Sp. Sess. 1920, p. 38, *held* a collateral attack on the Commission's order.

**3. Courts ⬛366(1)—State court's construction of state statute adopted by United States Supreme Court.**

In the construction of a state statute, where no federal question is presented, the United States Supreme Court will adopt the construction placed thereon by the state Supreme Court.

**4. Waters and water courses ⬛203(6) — Charter and statutes held not to invest city with absolute power to suspend Public Service Commission's power to regulate water rates.**

Attalla City Charter, § 11, subd. 10, and Code 1907, § 1260, empowering city to provide water supply and to maintain and operate waterworks or contract for supply for inhabitants did not grant absolute and uncontrolled power to suspend the legislative power of the state acting by its Public Service Commission, under Const. 1901, § 22, to regulate water rates or substitute new and reasonable rates therefor.

**5. Municipal corporations ⬛78—Grant of power to suspend legislative power to regulate rates not implied.**

The grant of absolute and uncontrolled power to city to suspend legislative power of state acting by Public Service Commission to regulate water rates or substitute new rates will not be implied, but must be expressly given in plain and unambiguous terms.

**6. Constitutional law ⬛81—Power to regulate rates of public utilities is within police power.**

The power reasonably to fix and regulate rates of public utilities is within the police power; a power lodged with the legislative department and agencies created by it to which that power may be and is delegated.

**7. Constitutional law ⬛81—Police power cannot be abridged or suspended by contract between citizens of state or municipality and citizen.**

The police power of the state cannot be abridged or suspended by contract between citizens of the state or between a municipality and a citizen thereof.

**8. Waters and water courses ⬛203(6)—Public Service Commission held empowered to fix water rates, notwithstanding lease between city and water company fixing rates.**

Under Acts Sp. Sess. 1920, p. 38, §§ 17, 18, 28, 31, 55, 62, 66, the Public Service Commission was empowered to fix rates to be charged by water company, notwithstanding existing lease between city and company fixing rates, since the city had no power by such lease to deprive the Legislature or its agent, the Public Service Commission, of the exclusive jurisdiction to fix rates, under Const. 1901, § 22, such power not being implied.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

Bill in equity by the City of Attalla against the Alabama Water Company, for specific performance of a contract to furnish water, and injunction to restrain the exaction of higher rates for service than those provided by the contract. From a decree granting the relief prayed, respondent appeals. Reversed and remanded.

Pertinent provisions of the contract entered into by the city of Attalla with the predecessor of Alabama Water Company, sought to be enforced, are as follows:

"1. That for and in consideration of the mutual promises and agreements herein contained and the payment by the company of an annual rental of five hundred dollars ($500.00), during the life of this lease, the city does hereby lease to the company, its successors and assigns, the waterworks and waterworks system and plant in and belonging to the city, including the pumping station, buildings, grounds, pumps, boilers, engines, and everything belonging thereto, together with the standpipe, mains, valves, piping and everything belonging thereto and forming any part of the said waterworks and waterworks system except the fire hydrants installed prior to July 9, 1913, the term of such lease to be for a period of twenty-seven years from the date hereof."

"8. All water shall be sold to consumers by meter measurement, the meter to be installed and maintained by the company and a minimum charge of fifty cents (50) per month shall be made for each service rendered through and by each meter installed, whether water to that amount is used or not, except that the minimum charge for each service rendered through and by each meter for business houses shall be twenty-five cents (25) per month and the company shall have access to the premises of consumers at all reasonable times for the purpose of installing, repairing, reading and testing meters; the price for water furnished shall be at the rate of twenty-five cents (25) per one thousand (1,000) gallons with a discount of ten per cent. (10%) for prompt payment within ten (10) days after bill is rendered."

"9. It is agreed that those customers who are now on flat rates for water supply may stay on flat rates so long as they do not [use] water in excess of that to which they are entitled under the city ordinances and the rules of the company, but when once a meter has been installed for his use that he will continue on a meter rate."

"19. It is agreed that the company may charge three & 50/100 dollars ($3.50) to all consumers for the tapping the mains and for bringing the water to its sidewalks, but the consumer has the right to furnish his pipe and connect at the sidewalk if he so desires."

Respondent filed plea in abatement, asserting that the circuit court was without jurisdiction to hear and determine the cause, in that, after petition, hearing, etc., as provided by Acts of 1920, p, 38, the Alabama Public

---

⬛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Service Commission made an order or decree regulating the rates to be charged by respondent, which decree is in full force and effect. Demurrer of complainant to this plea was sustained by the trial court.

Knox, Acker, Sterne & Liles, of Anniston, Hood & Murphree, of Gadsden, and Eyster & Eyster, of Albany, for appellant.

Harwell G. Davis, Atty. Gen., and Hugh White, Asst. Atty. Gen., for Alabama Public Service Commission, amicus curiæ.

This is a collateral attack on the order of the commission, which order will be sustained, unless absolutely void. Miller v. Thompson, 209 Ala. 469, 96 South. 481; Acklen v. Goodman, 77 Ala. 521; Johnson v. Johnson, 182 Ala. 376, 62 South. 706. The commission has general and exclusive power and jurisdiction to regulate and supervise utilities with respect to rates and contracts relating thereto. Acts 1920, p. 38. This jurisdiction is within the police power, and cannot be abridged or suspended by contract between citizens, or between a municipality and a citizen. The order of increase is not in violation of the contract clauses of the Constitution. Union D. G. Co. v. Georgia P. S. C., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. 1420; City of Mobile v. Mobile Elec. Co., 203 Ala. 577, 84 South. 816; Salt Lake City v. Utah L. & T. Co., 53 Utah, 210, 173 Pac. 556, 3 A. L. R. 715; 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1423; Hunter v. Pittsburgh, 207 U. S. 178, 28 Sup. Ct. 40, 52 L. Ed. 151; Stevens v. Thames, 204 Ala. 487, 86 South. 77; City of Winfield v. Court of Ind. Rel., 111 Kan. 580, 207 Pac. 813; Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394, 39 Sup. Ct. 526, 63 L. Ed. 1054; New Orleans v. N. O. W. W. Co., 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943. The commission is not required to set out in writing the findings of fact upon which it bases its orders. Such orders will be upheld, unless their invalidty is shown by those complaining of them. Acts 1920, p. 38; R. R. Comm. v. St. L. & S. F., 195 Ala. 529, 70 South. 645; R. R. Comm. v. L. & N., 197 Ala. 164, 72 South. 397; R. R. Comm. v. A. G. S., 185 Ala. 354, 64 South. 13, L. R. A. 1915D, 98; R. R. Comm. v. N. A., 182 Ala. 357, 62 South. 749; Spraggins v. State, 183 Ala. 663, 63 South. 83; Whaley v. State, 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499; Ala. P. S. C. v. W. U. T. Co., 208 Ala. 243, 94 South. 472.

Goodhue & Lusk and E. O. McCord & Son, all of Gadsden, for appellee.

The private and proprietary interests of municipalities are entitled to constitutional protection against legislative impairing of the validity of contracts. New Orleans v. N. O. W. W. Co., 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943; Graham v. Folsom, 200 U. S. 248, 26 Sup. Ct. 245, 50 L. Ed. 464; Shapleigh v. San Angelo, 167 U. S. 646, 17 Sup. Ct. 957, 42 L. Ed. 310; 6 R. C. L. (Const. Law) § 337; 12 C. J. (Const. Law) 1004; 4 McQuillin, Mun. Corp. 2719; Omaha Water Co. v. Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614; Acts 1888–89, pp. 811, 829; Code 1907, § 1260; Mobile Elec. Co. v. City of Mobile, 201 Ala. 607, 79 South. 39, L. R. A. 1918F, 667; Gadsden v. Mitchell, 145 Ala. 137, 40 South. 557, 6 L. R. A. (N. S.) 781, 117 Am. St. Rep. 20. The order of the commission is void; it is essential that it be rested upon a finding of facts. Wichita Co. v. Pub. Utilities Comm., 260 U. S. 48, 43 Sup. Ct. 51, 67 L. Ed. 124; R. R. Comm. v. L. & N., 197 Ala. 161, 72 South. 397.

THOMAS, J. The primary question is: Did the trial court commit error in enjoining appellant from changing the rates for water supplied the inhabitants of the city of Attalla, and charging the rates fixed by the Alabama Public Service Commission? The contract between the city and the water company is of date September 30, 1916. The order of the Alabama Public Service Commission is of date October 1, 1921, and was sought to be made by authority of the act of October 1, 1920 (Gen. and Local Acts Sp. Sess. 1920, p. 38). The lease contract in question had not the approval of the Public Service Commission.

[1] The suit is a collateral attack on the order of the Alabama Public Service Commission. The general rule of law is that such an order or judgment will be sustained on collateral attack unless the same be void. Acklen v. Goodman, 77 Ala. 521; Hamilton v. Tolley, 209 Ala. 533, 96 South. 584; Miller v. Thompson, 209 Ala. 469, 96 South. 481; Alexander v. Nelson, 42 Ala. 462. See, also, Martin v. Hall, 70 Ala. 421, motion for summary judgment against constable and sureties on official bond; Wightman v. Karsner, 20 Ala. 446, challenging the order of court of commissioners of roads and revenue; Barron, Adm'r, v. Tart, 18 Ala. 668, motion by administrator to quash an execution and to retax costs. The distinction between a direct and a collateral attack for the purpose of avoiding or correcting a judgment or decree is adverted to in Hamilton v. Tolley, 209 Ala. 533, 96 South. 584; Miller v. Thompson, 209 Ala. 469, 96 South. 481; and authorities collected in Edmondson v. Jones, 204 Ala. 133, 85 South. 799.

[2] The order of the Public Service Commission made the subject of this suit might have been reviewed by an appeal to the circuit court of Montgomery county in equity, and then by appeal to this court, as provided in section 62 of General and Local Acts Special Session 1920, p. 56. This procedure was not observed by the city of Attalla; and its bill praying injunction to prevent the Alabama Water Company collecting the rate fixed by the Public Service Commission is

merely a collateral attack on the Commission's order fixing a different rate to be charged consumers of water furnished by that corporation.

The jurisdiction and powers of the Alabama Public Service Commission that are given expression in sections 17 and 18 of the act, supra, are:

"The Commission shall have general and exclusive power and jurisdiction to regulate and supervise every utility in respect to its rates and service regulations, and in respect of its franchises, licenses and contracts, in so far as they affect its rates and service regulations, and in respect of its financing and securities in accordance with the provisions and subject to the reservations of this act, and to do all things necessary and convenient in the exercise of such power and jurisdiction. Nothing in this act contained, however, shall be deemed to confer upon the commission power and jurisdiction to regulate and supervise in respect of rates and service regulations any utility owned and operated by any municipal corporation in the state. From time to time the Commission may make such recommendations to any municipal corporation which owns and operates a utility, as from its experience in the administration of this act may seem to the Commission necessary or advisable.

"*Contracts with Municipalities and Utilities.* Rates and service regulations may hereafter be established by contract between a municipality and utility for a specified term not exceeding thirty years, but only by and with the approval of the Commission to be expressed by its order."

The Commission's "powers and jurisdiction" are, among other things, declared in section 66 as follows:

"*Powers and Jurisdiction of Commission.* The rights, powers, authority, jurisdiction and duties by this act conferred upon the Commission shall be exclusive and in respect of rates and service regulations, shall be exercised notwithstanding any rights heretofore acquired by the public under any franchise, contract or agreement between any utility and municipality, county or municipal subdivision of the state, and shall be exercised, so far as they may be exercised consistently with the Constitution of the state and of the United States, notwithstanding any right heretofore so acquired by any such utility. Nothing in this section or elsewhere in this act contained is intended or shall be construed, (a) to limit or restrict the police jurisdiction or power of municipalities over their streets and other highways and public places or the power to maintain or the power to require maintenance of the same; (b) to limit or restrict any right or power, by contract or otherwise, of any municipality to require utilities to have and maintain the portions of highways used and occupied by them; (c) in respect of matters other than rates and service regulations, over which exclusive jurisdiction is conferred by this act upon the commission to affect existing right and powers or rights and powers hereafter acquired by municipalities under valid contracts with utilities; (d) in respect of matters other than rates and service regulations, to repeal any

power of any municipality (1) to adopt and enforce reasonable police regulations and ordinances in the interest of the public safety, moral and convenience, or (2) to protect the public against fraud, imposition or oppression by utilities within their respective jurisdictions, or (3) to require the discharge by utilities of their respective duties within such municipalities, whether arising out of contracts with the municipality, or by statute or regulation by the commission or otherwise. Any utility accepting under the provisions of this act any rate or service regulation more favorable to it than provided by any ordinance or contract under which it claims rights from any municipality shall be held to waive any and all terms and conditions in such ordinance or contracts as to rates and service regulations in its favor and to submit the same in all respects to reasonable regulations by the state or its lawful agencies."

Proceeding on the assumption that the lease contract in question is subject to this general statute, we are dealing with the order of a Commission with general powers and jurisdiction which are exclusive in respect of rates, service regulations, etc. With this understanding of the powers and jurisdiction of the Public Service Commission, we may inquire of the procedure to an order or judgment in the premises. In section 28 is contained provisions for complaint and investigation by the Commission after notice and a hearing on complaint, or of its own motion whenever it deems that the public interest so requires. The order to be entered is thus indicated in the statute:

"If upon such investigation and hearing the Commission shall find that any rate, service regulation, classification, practice or service is unfair, unreasonable, unjust or inadequate, or unjustly discriminatory, or unduly preferential, or unfairly competitive, or that the service is inadequate or cannot be obtained, it may fix and order substituted therefor such rate, service regulation, classification, practice or service as it shall determine to be just, reasonable, fair and adequate, and if the finding of the commission be that the rate, service regulation, classification, practice or service investigated by it, be just, reasonable, fair and adequate, it shall enter an order approving the same. Any such orders shall be final orders within the meaning of this act." Section 31.

Provisions of section 55 are that a substantial compliance by the Commission with the requirements of the act will give effect to its orders, etc.; and provisions of section 68 are:

"Every order of the Commission shall be in writing, and in cases of importance may be accompanied by an opinion, setting forth in brief the facts on which the commission has based its order."

The order of the Commission sought to be collaterally assailed recited, among other things, that the Commission had jurisdiction to act in the premises, stated the respective

contentions of the parties, adverted to the salient provisions of the lease contract, found that- the property belonged to the city of Attalla, and that its people are served by the said waterworks. It is further recited that evidence was offered of the reasonableness of the "rates in this case," of the expenditures by the water company and its predecessors. etc., and what the company had expended under the lease contract. It is then recited that the Commission found the disbursements required would aggregate the sum of $12,283.09. The "final order" is:

"Having regard for the terms of said contract as far as the general welfare will permit, it is therefore ordered adjudged, and decreed that—

"(1) That the city of Attalla is the owner of the waterworks plant at Attalla together with all extensions. additions, betterments and improvements thereto, by the Alabama Power Company, and its transferee and successor, under the terms of said contract of September 30, 1913.

"(2) The city of Attalla is indebted to Alabama- Water Company as of June 30, 1921, in the sum of $37,144.09, for extensions, additions, betterments, and improvements to the said water plant owned by said city under the terms of said contract, subject, however, to such adjustments as are provided for in section 7 of said contract.

"(3) The rates set forth in said contract are modified and annulled in so far as they conflict with the provisions of this order, and the following rates are fixed and said Alabama Water Company is ordered to establish and maintain the same, viz.: [The order then proceeding to fix the "meter rates," "minimum charges," "flat rates," and rates or charges for public and private fire protection, and fire hydrants, and rates for building and other special purposes are severally and specifically fixed.]"

The order concludes with a general statement that the rates, rules and regulations fixed by the order cannot be altered or changed by any official or employee of the Alabama Water Company.

There is a fundamental distinction between the exercise of a general jurisdiction and power by a court, board, or commission and the exercise of a limited or special power. It is unnecessary to do more than cite the case of Pitts v. Boggs, 208 Ala. 194, 93 South. 906, where this distinction was observed. In the exercise of such general power, orders or judgments are usually based on some findings of facts; but it has been declared that failure in a matter of form where a mere irregularity has intervened in the rendition does not render such order or judgment void, but merely voidable on appeal. Hamilton v. Tolley, 209 Ala. 533, 96 South. 584; Miller v. Thompson, 209 Ala. 469, 471, 96 South. 481; Roman v. Morgan, 162 Ala. 133, 50 South. 273; Acklen v. Goodman, 77 Ala. 521. See, also, Gunn v. Plant, 94 U. S. 664, 24 L. Ed. 304; Robinson v. Fair, 128 U. S. 53, 9 Sup. Ct. 30, 32 L. Ed.

211 ALA.—20

415, 423. As to application of this rule, to support an order or judgment of the Commission of equal dignity of courts of general jurisdiction, see Railroad Commission v. A. G. S. R. Co., 185 Ala. 354, 359, 64 South. 13; Railroad Commission v Ala. North Ry. Co., 182 Ala. 357 368, 62 South. 749, Cook v. Commissioners, 178 Ala. 394, 59 South. 483; Johnson v. Johnson, 182 Ala. 376, 62 South. 706; Stephens v. Court of County. Commissioners, 180 Ala. 531, 61 South. 917.

[3] The case of Wichita R. & L. Co. v. Public Utilities Commission, 260 U S. 48, 43 Sup Ct. 51, 67 L. Ed. 124, is not sufficient to overturn the foregoing announcements by our court or by the Supreme Court of the United States as to orders of courts and boards exercising general jurisdiction if the Public Service Commission was in the exercise of general jurisdiction and powers in making the order, and if that order affected the lease contract in question. In the Wichita Case the construction made was "under the statutes of the state" of Kansas. Even if the Kansas act was in all respects as the Alabama statute, this court would not be required to place a like construction on the Alabama statute. In the construction of a state statute (there being no federal question presented) the Supreme Court of the United States will adopt the construction placed thereon by the state .Supreme Court. The Wichita Case, however, is limited to the declared express requirements of the Kansas act. It was there insisted that a judgment or order of such an administrative body must be supported by the finding of facts shown by the record, etc. The court said:

"The proceeding we are considering is governed by section 13. That is the general section of the act comprehensively describing the duty of the Commission, vesting it with power to fix and order substituted new rates for existing rates. The power is expressly made to depend on the condition that after full hearing and investigation the Commission shall find existing rates to be unjust, unreasonable, unjustly discriminatory or unduly preferential. We conclude that a valid order of the Commission under the act must contain a finding of fact after hearing and investigation, upon which the order is founded, and that for lack of such a finding, the order in this case was void. This conclusion accords with the construction put upon similar statutes in other states. Public Utilities Commission v. Springfield Gas & Electric Co., 291 Ill. 209; Public Utilities Commission v. Baltimore & Ohio Southwestern R. R. Co., 281 Ill. 405. Moreover, it accords with general principles of constitutional government * * * When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective. * * * We rest our decision on the principle that an express finding of unreasonableness by the Commission was indispensable under the statutes of the state."

This Kansas statute (Laws of Kansas 1911, c. 238, pp. 417, 422, § 13) so construed contained the words:

"If upon any investigation it shall be found that any regulation, measurement, practice, act or service complained of is unjust, unreasonable, unreasonably inefficient, insufficient, unduly preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of this act or of the orders of this Commission, or if it be found that any service is inadequate or that any reasonable service cannot be obtained, the Commission shall have power to substitute therefor such other regulations, measurements, practices, service or acts * * * as shall be just and reasonable. * * *".

The construction of the Supreme Court of the United States was no doubt in supposed consonance with the state's construction of the statute. Kaul v American Independent Telephone Co., 95 Kan. 1, 147 Pac. 1130. That is to say, under sections 13 and 16 of the Kansas statute (Laws of Kansas 1911, c. 238, pp. 422, 424) the power to establish new rates is made dependent upon the finding of the Public Utilities Commission (of Kansas) that the existing "regulation, measurement, practice, act or service *complained of* is unjust. unreasonable, unreasonably. inefficient, insufficient, unduly preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of this act or of the orders of this commission." etc. (Italics supplied.). This is not the jurisdiction and power conferred by statute on the Alabama Public Service Commission. This Commission is clothed with "powers and jurisdiction" that are exclusive in respect of rates and service regulations, notwithstanding any rights theretofore acquired by the public under any contract or agreement between any utility and municipality, etc. Gen. and Local Acts Sp. Sess. 1920, p. 57, § 66. It has the right and is charged with the duty of the exercise of its powers and jurisdiction to make the necessary orders in the premises (1) "upon a complaint made against," etc., and notice and hearing; (2) "without such complaint" whenever the Commission "deems that the public interest so requires," upon notice and a hearing; and (3) "to make such investigation as it may deem necessary or appropriate" after "notice and a hearing." Section 28.

If the Commission finds the rate unjust, unfair, unreasonable, etc., it becomes its duty to "fix and order" the substitution therefor of such rate, regulation, service, classification, or practice "as it shall determine to be just, reasonable, fair and adequate," etc., in the premises; and, if the finding of the Commission is that the rate, service regulation, classification, or practice is just, reasonable, fair, and adequate, "it' shall enter an order approving the same." Section 31.

In this well-recognized distinction between the exercise of the powers and jurisdiction of the Commission under the Kansas statute and the statute of force in this state is to be found the basis for the decision and judgment in the case of Wichita R. & L. Co. v. Public Utilities Commission, 260 U. S. 48, 43 Sup. Ct 51, 67 L Ed. 124, and a reason why that case does not control and render void the order of the Alabama Public Service Commission of date October 1, 1921. The trial court was in error in its rulings that the Alabama statute (Gen. and Local Acts Sp. Sess. 1920, p. 38) required another and different finding of fact than that contained in said order to prevent that judgment being void.

The charter of the city of Attalla was granted by the General Assembly. Acts 1888–89, p. 811 et seq. Section 1 thereof is as follows:

"Be it enacted by the General Assembly of Alabama, that the inhabitants of the town of Attalla, in Etowah county, shall be and continue a body politic and corporate by the name of the 'city of Attalla,' and by that name may sue and be sued, receive and grant, and do all other acts as natural persons, in respect of the powers herein granted; may purchase and hold real, personal and mixed property, and dispose of the same for the benefit of said city, and may have and use a city seal, which may be broken, or altered or changed at pleasure."

Section 11 provides further:

"That the mayor and aldermen of said city shall have full and complete powers:

"1. To make and adopt by-laws and ordinances in whatever manner and upon whatever subject to carry out the powers herein granted, and for the good government and order of said city, as they may think proper, and generally and in addition to the powers herein specifically enumerated, which are no limitation upon the powers included in this general grant of powers, to ordain and pass such ordinances and by-laws not inconsistent with the laws of the state, as shall be needful for the government, police interest, welfare and good order of said city."

And subdivision 10 of section 11 authorizes the city to "sink, repair and regulate public wells and cisterns, to establish and regulate fire plugs and public hydrants, *and to make all needful provisions to supply the city with water*, gas and gas lights, and electric lights, and ·to control street lamps." (Italics supplied.) It is provided by section 1260 of the Code of 1907:

"Cities and towns shall have the right to establish, * * * [properly] maintain, and operate water works, or contract for a supply of wholesome water for its inhabitants," etc.

It is contended by counsel for appellee that the lease contract in question fixing the rates for water to be supplied by the company to the inhabitants of Attalla is protected by the contract clauses of the state and federal Con-

stitutions. Const. Alabama, § 22; Const. United States, art. 1, § 10 (page 157, vol. 1, Code 1907). This contention is rested upon subdivision 10 of section 11 (Acts 1888–89, pp. 811, 818) of the charter of the City of Attalla, and section 1260 of the Code of 1907.

Under subdivision 10 of section 11 of the charter of the city of Attalla and section 1260 of the Code of 1907, as declared by the two opinions in Mobile Electric Co. v. City of Mobile, 201 Ala. 607, 79 South. 39, L. R. A. 1918F 667, and 203 Ala. 577, 84 South. 816, had the city of Attalla the power of inviolable contract as to the rates for water supplied the inhabitants thereof? That is to say, was the power granted the city, such as indicated in the lease contract, broad enough to suspend the power of the state (acting by its Public Service Commission) to revise, increase, or decrease said "contract rates"? The power which was granted was no doubt sufficient to authorize the parties to the contract to contract as to such rates as could not be revised or annulled by either of the said parties, within the time specified, without the consent of the other. M. L. & T. Co. v. Avant, 202 Ala. 404, 80 South. 497, 3 A. L. R. 384. Under such a contract, one of the parties, without the consent of the other, could not revise or annul the contract rates, as was shown to have been attempted in the case of Mobile Electric Co. v. City of Mobile, 201 Ala. 607, 79 South. 39, L. R. A. 1918F, 667. In the second appeal of that case, however (203 Ala. 577, 84 South. 816), it is declared that the state had the power to revise the contract rates, or substitute new reasonable rates therefor, although at that time the more enlarged powers given expression by the act of October 1, 1920 (Gen. and Local Acts Sp. Sess. 1920, p. 38 et seq.), had not been conferred on the Public Service Commission.

Appellee says the lease contract was executed in 1916, and the charter provisions were broad enough to confer the right of making an inviolable contract for rates for the period indicated. The general rule of construction of charters of municipal corporations and grants of power to them is stated by Mr McQuillin in his work on Municipal Corporations, vol. 1, as follows:

"Sec. 352. A municipal corporation may exercise, first, all powers granted in express terms, consistent with the federal Constitution and laws and the state Constitution and general laws of the state; second, certain implied or incidental powers, in like manner harmonious, (a) growing out of those expressly granted, or (b) those which belong to it because it is a municipal corporation, or (c) those which are essential or reasonably proper, to give effect to powers expressly granted, or recognized, as pertaining to municipal existence." Pearson v. Duncan, 198 Ala. 25, 73 South. 406, 3 A. L. R. 242; Eufaula v. McNab, 67 Ala. 588; City of Bessemer v Bessemer City Waterworks, 152 Ala. 391, 407, 44 South. 663; Cleveland,

etc., Co. v. City of Greenville, 146 Ala. 559, 41 South. 862; Gambill v. Endrich Bros., 143 Ala. 506, 39 South. 297; New Decatur v. Berry, 90 Ala. 432, 7 South. 838, 24 Am. St. Rep. 827; L. R. A. 1915C, 264, note; L. R. A. 1918E, 906, note.

"Sec. 353 * * * As a general proposition, only such powers and rights can be exercised under grants of the Legislature to corporations, whether public or private, as are clearly comprehended within the terms of the act or derived therefrom by necessary implication, regard being had to the objects of the grants." Eufaula v. McNab, 67 Ala. 588, 42 Am. Rep. 118; B. & P. M. St. R. Co. v. Ry. Co., 79 Ala. 465, 471, 58 Am. Rep. 615; 1 Dillon on Mun. Corp. (3d Ed.) § 89. "Any ambiguity or doubt arising out of the terms employed in the grant of power must be resolved against the corporation and in favor of the public. Charters are special grants of power from the sovereign authority, and ordinarily they must be strictly construed. Whatever is not given expressly" (Cooley's Const. Lim. 195), "or as a necessary means to the execution of expressly given powers, is withheld."

[4, 5] The foregoing rules of construction, applied to subdivision 10 of section 11 of the charter of the city of Attalla, and section 1260 of the Code of 1907, will show that the Legislature did not grant the absolute and uncontrolled power to the city to suspend the legislative power of the state (acting by its Public Service Commission) to regulate water rates or substitute new and reasonable rates therefor. The grant of such an extraordinary or unusual power by the state to a municipal corporation will not be held to rest in implication. Such a grant must clearly appear—must be expressed in plain and unambiguous terms—and will not be implied by any rule of construction. The commentator in the note accompanying the opinion in the case of Salt Lake City v. Utah Light & Traction Co., 3 A. L. R. 715, 732, states the rule, as to the right of the state to grant a municipality the right to make the inviolable contracts, for rates, as follows:

"But the grant to a municipality of the power to make any inviolable contract as to rates must be made in clear and unequivocal terms, and the intent to make such a delegation of power must clearly and unmistakably appear, and will not be implied."

See Home T. & T. Co. v. Los Angeles (1908) 211 U S 265, 29 Sup. Ct. 50, 53 L. Ed. 176.

We are of opinion that counsel for appellee are not supported in the contention that the Legislature of Alabama had bestowed upon the city of Attalla, prior to 1916, the power to make an inviolable contract as to the water rates in question. That is to say, the Legislature had not in said charter or by section 1260 of the Code of 1907 bestowed upon the city of Attalla the power to suspend the power of the state (acting through

its Public Service Commission) to regulate such rates, or fix new rates, as are reasonable and just in the premises, as from time to time the Legislature may deem expedient and just. Const. 1901, § 22.

In Bessemer v. Bessemer City Waterworks (1907) 152 Ala. 391, 44 South. 663 (decision rendered prior to the decision of the Supreme Court of the United States in Union Dry Goods Co. v. Georgia Public Service Corp. [1918] 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420, or Mobile Electric Co. v. City of Mobile, 201 Ala. 607, 79 South. 39, L. R. A. 1918F, 667), the court did not announce a contrary doctrine. In the Bessemer Case the declaration was that under the charter of the city of Bessemer (established by an act of the General Assembly December 13, 1900 [Acts 1900–01, p. 444]) that city might contract with a water company for rates at which water should be supplied to its citizens for a definite period, suspending its charter powers as to such matter, etc., for such period; and that under such a contract a vested right is in the other party for the time fixed; and it was held that the city could not, by subsequent ordinance, within the definite period reduce the rates specified. To the same effect was Birmingham Waterworks v. City of Birmingham (D. C. 1913) 211 Fed. 497; Id., 213 Fed. 450, 130 C. C. A. 96. In neither of these cases was the right of the reasonable exercise by the state of its police power as to such matters as that before us the question for consideration under section 22 of the Constitution.

The authorities to the effect that municipalities in the exercise of proprietory or business enterprises are governed by the business rules of law applicable to those business enterprises do not militate against the views we have expressed as to the superior authority of the state under its right of the due exercise of the police power. Town of Athens v. Miller, 190 Ala. 82, 91, 66 South. 702, Birmingham, etc., Co. v. Brown, 191 Ala. 457, 67 South. 613, L. R. A. 1915D, 1086; Pilcher v. City of Dothan, 207 Ala. 424, 93 South. 16; Mitchell v. City of Gadsden, 145 Ala. 137, 40 South. 350; Weller v. City of Gadsden, 141 Ala. 642, 37 South. 682, 3 Ann. Cas. 981; Eutaw Ice, W. & P. Co. v. Town of Eutaw, 202 Ala. 143, 144, 79 South. 609.

The act of October 1, 1920, supra, was passed by the Legislature with a knowledge of the decision in City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 South. 816, and was within the provisions of Constitution of 1901, § 22. The delegation of authority to the Alabama Public Service Commission by the act of September 25, 1915 (Gen Acts, p. 867), was of exclusive jurisdiction (City of Birmingham v. Sou. Bell T. & T. Co., 203 Ala. 251, 82 South. 519; Hodge v. Ala. Water Co., 205 Ala. 472, 88 South. 585), subject only to the limitations contained in the concluding clauses of section 3 of that Act (City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 South. 816). In the latter case it was declared that the state had the authority to fix the reasonable rates or charges of such public utilities supplying the inhabitants of a municipality, which superseded "other rates fixed by previous existing contract, and the legitimate use of this police power does not impair the obligation of a contract or deprive the consumer of property without due process within the state or federal Constitutions." Union Dry Goods v. Georgia Public Service Corp., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1420; Victoria v. Victoria Ice, Light & Power Co., 134 Va. 134, 114 S. E. 92, 28 A. L. R. 562.

[6-8] The provisions of section 65 of the Act of 1920 and those contained in section 3 of the act of 1915 are different, as we have indicated The discussion of the subject may be concluded by the general observation that the power of a reasonable regulation and to fix reasonable rates of public utilities falls within the exercise of the police power; a power lodged with the legislative department and agencies created by it to which that power may be and is delegated. The police power of the state cannot be abridged or suspended by contract between citizens of the state, or between the municipality (a mere agency of the state) and a citizen thereof. It follows that the increase of the contract rates for water supplied to the inhabitants of the city of Attalla by the Alabama Public Service Commission was not in violation of the contract clause of either the state or federal Constitution, the increased and substituted rates not being unreasonable. Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S. 372, 39 Sup. Ct. 117, 63 L. Ed. 309, 9 A. L. R. 1423, note; City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 South. 816; Salt Lake City v Utah Light & Traction Co., 52 Utah, 210, 173 Pac. 556, 3 A. L. R. 715, and notes, pages 730, 731, 738, 744.

The decree of the circuit court in ruling on demurrer to plea, construction of the contract, and holding the order of the Alabama Public Service Commission void is in conflict with the foregoing views; that decree is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.